JAMES B. SHEEAN, PLAINTIFF, v. GEORGE W. HOLMAN, JR., ROBERT BUERMANN, HENRY H. DAVIS AND SANGER BROWN, DEFENDANTS.

Argued October 6, 1927—Decided March 29, 1928.

Before GUMMERE, CHIEF JUSTICE, and Justices BLACK and LLOYD.

For the rule, *McCarter & English*.

*Contra, Howard Ewart.*

PER CURIAM.

This is a rule allowed to the defendant George W. Holman to show cause why a verdict rendered against him at the Ocean County Circuit of the Supreme Court, at the suit of James B. Sheean, should not be set aside. The complaint charged in its first count a conspiracy on the part of Holman, Buermann, Davis and Brown to have the plaintiff incarcerated in the New Jersey State Hospital for the Insane. The second count of the complaint charged false arrest and false imprisonment against the same defendants. Both counts claimed compensatory and exemplary damages.

At the conclusion of the trial the plaintiff suffered a nonsuit as to all of the defendants except Holman, and the case having been submitted against him alone, the jury found a verdict of $25,000 in favor of the plaintiff.

The fundamental reasons urged for making the rule absolute are that the verdict was contrary to the weight of the evidence and that the damages are excessive.

The defendant is the plaintiff's father-in-law. In April, 1924, the latter came to Toms River from the west, bringing with him his family, consisting of his wife (defendant's daughter) and two children, and located at the Ocean House, a hotel kept by the defendant. Between the two men marked differences had grown up resulting in the estrangement and separation of the family from the plaintiff, followed by the plaintiff himself taking up his residence at the Marion Inn, also in Toms River. Shortly thereafter the defendant caused the plaintiff's apprehension and procured an order for his commitment to the insane asylum at Trenton. This order on the following day, however, was nullified by his release under *habeas corpus* proceedings. It was for this proceeding, unjustified and maliciously instituted, as the plaintiff contends, that the present action was brought, and at the trial

damages were claimed not only for the injury to the plaintiff's reputation, his feelings, peace of mind, standing, &c., but punitive damages as well.

There was abundance of evidence, we think, that the action of the defendant was not justified by the facts; that the proceeding was without probable cause and that the defendant was actuated by bad motives in causing plaintiff's arrest and detention.

Before taking the steps recited against the plaintiff, Holman endeavored to procure the professional aid of Dr. Brower, a well-known physician of Toms River, in having plaintiff committed to the asylum, and was told after a physical examination by the doctor that Sheean was sane and that he would not be a party to committing a sane man to an asylum. Notwithstanding this defendant procured the necessary formal papers for commitment from two other physicians without an examination, assuring them that plaintiff was too dangerous to be examined. At the trial the defendant persisted in his efforts to show the plaintiff to be insane by introducing evidence to this end. The entire proofs, however, were overwhelmingly to the contrary, even the certifying physicians testifying that they could on subsequent examination observe nothing abnormal in the plaintiff.

As to the damages, it is not easy to deal with this phase of the case. The actual incidents which lead to the bringing of this action were few and comprised but a short period of time, from one evening until the next, but their consequences were large. The plaintiff has been a man of parts and prominence. He is sixty-four years of age, a college graduate and a lawyer by profession; has practiced in the Supreme Court of the United States for a long period, became the general attorney of the Chicago, St. Paul, Omaha and Minneapolis Railway, and later a director and vice-president of the Chicago and Northwestern Railway Company. He continued as vice-president until 1923, when he was pensioned by that company. It was proven that the arrest and detention were published broadly over the land and must have reached the old acquaintances and friends of the plaintiff. It would naturally

seriously impair his standing with them and probably much more so among his new acquaintances in Ocean county. To this, of course, may be added whatever the jury may have determined as proper by way of exemplary damages. We think there is ample evidence that the defendant was actuated by venom and hatred; that his conduct was not in good faith but was intended to discredit the plaintiff and incidently to widen the breach already existing between the plaintiff and his family. Counsel for the plaintiff has industriously collected a large number of cases of similar character in which verdicts, some of them much larger, on no greater foundation, have been sustained. The damages are large, but in view of the great wrong done to the plaintiff and of the wide latitude allowed to juries in cases of this character, and particularly when exemplary damages may be awarded, we incline to think that we would not be justified in disturbing the verdict.

A number of trial errors are claimed to have crept into the case, in the admission or rejection of testimony, in the charge to the jury, and in the denial of some instructions requested by defendant of the learned trial judge, but none of them are substantial. Hypothetical questions on sanity propounded to lay witnesses were clearly incompetent, the charge was an accurate presentation of the law and the requests were, so far as proper, adequately covered therein.

The rule will be discharged.

## MEMORANDUM AS TO BILLS OF PARTICULARS

NOTE.—The following memorandum relating to Bills of Particulars by Edward P. Johnson, Esq., of Somerville, seems well worthy of a place among the Miscellaneous Reports.

It has been our thought (a) that section 102 of the Practice act of 1903 (replaced by rule 18 annexed to Practice act of 1912) simply allowed, in a contract case, a plaintiff to anticipate a demand for a Bill of Particulars by annexing a bill to his complaint (or a defendant to his counter-claim), and that the remedial purpose of the statute was to enable the plaintiff to prevent the defendant from delaying the suit by serving a demand for a Bill of Particulars before filing his answer and thereby gain delay, and (b) that this in no way altered the common law rules relating to Bills of Particulars.

If our understanding has been correct (there being no other change in the practice and no difference between contract and tort cases), then *Dixon* v. *Swenson,* 101 *N. J. L.* 22, appears to hold, in all cases—

(a) That a Bill of Particulars is *only* demandable in any event for the purpose of enabling the adverse party to frame his answering pleading;

(b) That it is only demandable prior to the filing of the answering pleading; and

(c) That it is only demandable as to the complaint and thereby never to be had as to affirmative matters set up in the answer, and is therefore the exclusive privilege of the defendant.

We are unable to believe that the scope of a Bill of Particulars is so limited.

Pleadings generally (particularly our old common law pleadings) were and are so framed that it hardly seems, except in very exceptional cases, that an adverse party would not be able to frame his answering pleading. Therefore, it would seem that there must have been other purposes of Bills of Particulars, purposes that were for the advancement of justice.

Inasmuch as it has been our thought that a demand for a Bill of Particulars is not by any means limited to the purpose of only enabling the defendant to frame his answer, but that it is demandable—

(a) In all cases. *Tilton* v. *Beecher*, 59 *N. Y.* 176; *Bills of Particulars*, 31 *Cyc.* 568; *Watkins* v. *Cope*, 84 *N. J. L.* 143.

(b) By either party. *Watkins* v. *Cope*, 84 *N. J. L.* 143.

And for the purposes—

(c) Of enabling the adverse party to frame his pleading (no citations necessary).

(d) Of limiting the proofs of the matters contained in the pleadings by the matters set out in the Bill of Particulars. *Clinton* v. *Lyon*, 3 *N. J. L.* 1036; *Kent* v. *Phenix Co.*, 69 *Id.* 532; *Johnston* v. *Bowers*, 69 *Id.* 544; *Hopper* v. *Gillett*, 6 *N. J. Mis. R.* 63.

(e) Of giving the adverse party such information as will enable him to know what specific matters he is called upon to meet and to be prepared to deny or explain them. *Tilton* v. *Beecher*, 59 *N. Y.* 176; *Bills of Particulars*, 31 *Cyc.* 568, 584; *Foster* v. *Curtis*, 120 *N. Y. App. Div.* 874; *New York, &c., Insurance Co.* v. *Granniss*, 118 *Id.* 830, and many other New York cases cited in 31 *Cyc.* 584; *Whittle's Admrs.* v. *Vance*, 3 *N. J. L.* 636; *Clinton* v. *Lyon*, 3 *Id.* 1036; *Stothoff* v. *Dunham's Exrs.*, 19 *Id.* 181; *Van Voorst, Admx.,* v. *Morris Canal Co.*, 20 *Id.* 200; *Voorhees* v. *Barr*, 59 *Id.* 123; *Cullen* v. *Woolverton*, 63 *Id.* 644; *Kent* v. *Phenix Co.*, 69 *Id.* 532; *Johnston* v. *Bowers*, 69 *Id.* 544; *Watkins* v. *Cope*, 84 *Id.* 143; *Heppard* v. *Carr*, 12 *N. J. L. J.* 185.

(f) And, that in the cases relating to the framing of the answering pleading, it must, of course, be demanded before the filing of the answering pleading (this is obvious).

(g) But, where it is for the other purposes, it is orderable at any and all times where it appears to the court that it is proper to order it for the purpose of doing justice and insuring a fair trial of the issues of the case (and where, in the judgment and discretion of the court, the court feels that there has not been such laches as works an injustice to the

other side). *Tilton* v. *Beecher,* 59 *N. Y.* 176; *Foster* v. *Curtis,* 120 *N. Y. App. Div.* 874; *New York, &c., Insurance Co.* v. *Granniss,* 118 *Id.* 830, and many other New York cases cited in 31 *Cyc.* 584, some holding that there are cases when an application for particulars before plea filed is premature. Also, by fair intendment, the New Jersey cases cited under above (d).

(h) And, in fact, in some instances a demand or order for a Bill of Particulars before plea is actually improper and premature. *Bill of Particulars,* 37 *Cyc.* 584; *Foster* v. *Curtis,* 120 *N. Y. App. Div.* 874; *New York, &c., Insurance Co.* v. *Granniss,* 118 *Id.* 830. See *Hopper* v. *Gillett,* 6 *N. J. Mis. R.* 63, which shows one of the embarrassments of Dixon *v.* Swenson, and inferentially modifies it in one of its phases on the ground that it was a contract case, but erroneously holding that contract cases are largely, if not entirely, regulated by statute. As we have above seen, contract and tort cases are governed by the same rules, and the only change which the statute made was to allow particulars in contract cases to be annexed to the complaint and thereby prevent the defendant from causing delay.

We think that to deprive a party of proper knowledge of the particulars of his adversary's pleading simply because he does not make the application before filing his answering pleading, may work grave injustice in many cases, particularly among the younger members of the bar who are not, and almost necessarily so, quite well versed in the technicalities of practice. (And this may very well apply to many of the older members of the bar.) For instances—

"To illustrate a contract case, a defendant may plead payment; the plaintiff knows very well that he has not been paid, and he has no trouble in denying it and has no reason to delay bringing his suit to an issue by making a demand for a bill and further delay in his pleading by applying to the court for an order, and so he files his reply; but he has a fair right to know when, where, by whom, whether by check, note or in cash, &c., the defendant claims he was paid, so that he can be prepared, in the language of Tilton *v.* Beecher, he may

summon witnesses to rebut such evidence as may be brought against him or explain the circumstances. .

"And, to illustrate a tort case, the defendant may plead that he warned the plaintiff; the plaintiff has no trouble in denying that and has no reason for delay in bringing his suit to an issue by making a demand for a bill and further delay in his pleading by applying to the court for an order; and so he files his reply; but he has a fair right to know when, where, by whom, whether oral or in writing, &c., so that, in the language of Tilton v. Beecher, he may summon witnesses to rebut such evidence as may be brought against him or explain the circumstances.

"The result is that the plaintiff files his reply without demanding particulars because he has no trouble in denying the allegations in the answer and wants to bring his case to an issue as soon as possible and avoid delay (and the avoidance of delay is of enough importance to have induced the statute relating to contract cases). He then proceeds to prepare for trial, and finds, in the language of Tilton v. Beecher, that he needs particulars of the allegations in the defendant's answer so that he may summon witnesses to rebut such evidence as may be brought against him or explain the circumstances. He applies for particulars, and is denied relief because Dixon v. Swenson holds that particulars are solely for the purpose of enabling him to frame his reply and can only be had before it is filed. Feeling that he is entitled to relief in some way, he then propounds interrogatories, and thereupon he is denied relief because interrogatories can only be propounded as to matters relating to the presentation of his own case, and cannot be used for the purposes of particulars. The practical result is that he is forced to go to trial without any of the particulars which he should have *for the purposes of the trial*. This does not appear to be such a result as is contemplated by Tilton v. Beecher and the other cases cited in this memorandum."

All through the cases, emphasis is laid on the importance of an adversary knowing the particulars of his opponent's case *for the purposes of preparing for trial*, summoning witnesses,

&c. The office of enabling a party to frame his answering pleading does not appear to have been nearly as much emphasized.

It is our thought that the above illustrations, together with the reasoning, are fully sustained by the cases cited above and by a general view of the remedial justice to be administered.

While it may be the natural inference of Dixon *v.* Swenson that particulars is the remedy before plea, and that interrogatories is the remedy after plea, yet we think that that is not the true distinction, and that the true distinction is that particulars relates to the case of the party called upon to furnish them and that interrogatories relate to the party's own case, an entirely different matter.

And we also think that if the plaintiff needs particulars of the defendant's answer in order to prepare for trial and to summon witnesses to meet the defendant's allegations, that the law provides a remedy and that that remedy is a Bill of Particulars for those purposes. We know of no other remedy. In the language of Blackstone, "For every wrong, the law provides a remedy."

As bearing upon the question of whether particulars can only be had before plea, it is worthy of note that the opinions of the courts constantly treat oyer, profert, inspection and particulars as all belonging to the same class of remedy, and, of course, oyer and inspection are not at all limited to being had before plea. So, too, the cases show that profert has been had many times as an incident to particulars. This whole general class is to be administered so that justice is done and a fair trial had and surprise to be avoided as far as possible.

In other words, particulars is an elastic remedy, to be had at any time when, in the language of Tilton *v.* Beecher, "when the circumstances are such that a party should be apprised *of the matters for which he is to be put for trial*" "in order that he may summon witnesses to rebut such evidence as may be brought against him, or explain the circumstances." And, if it was elastic in the days of common law pleading, how much more should it be elastic under our more modern plead-

ing. The whole present-day tendency is to get away from technicalities and to try to get a fair trial of the merits of the controversy.

## CONCLUSION.

It is our thought that the same situation exists as to Dixon v. Swenson that existed in the Hackensack Trust Company case (so misleading as to induce a frank statement some five years later that it was misleading as a statement of general law), to wit, that it is only to be read as applicable to the facts before the court in that particular case and not as a statement of the general law applicable to all cases.

Taken in that view, we can see that Dixon v. Swenson was the case of an application for particulars before plea, and therefore presumptively for the purpose of enabling the opposing party to frame his answering pleading, and that the application for more specific particulars was a renewal of the same application for the same purpose, and therefore properly not maintainable after plea filed.

But, as a statement that, in all cases, particulars are solely for the purpose of enabling the opposing party to frame his answering pleading and that they can only be had before plea filed, we think that Dixon v. Swenson is misleading.

Respectfully submitted,

EDWARD P. JOHNSON,
Somerville, N. J.