JOSEPH DOMBROSKI, PLAINTIFF, v. METROPOLITAN LIFE INSURANCE COMPANY, A BODY CORPORATE, AND VINCENT B. SMITH, DEFENDANTS.

Decided April 18, 1940.

For the plaintiff, *Quinn & Doremus.*

For the defendants, *Clifford I. Voorhees.*

KINKEAD, C. C. J. The defendants seek to set aside a verdict for $25,000 recovered against them by the plaintiff, in a suit for malicious prosecution, on the grounds that the verdict was excessive and that it was based on passion, sympathy, bias and prejudice.

This is the third trial of the issue. The first trial, which was held before the late Judge Lawrence in September, 1936, resulted in a disagreement. Judge Lawrence also presided at the second trial in May, 1938, which resulted in a verdict of $25,000 in favor of the plaintiff against both defendants. Judge Lawrence granted a rule to show cause why a new trial should not be granted, but before the argument had been concluded by counsel, Judge Lawrence passed away. Counsel for all parties agreed by stipulation thereupon, that the rule should be heard and determined by Judge Palmer.

Judge Palmer in an opinion which is reported in 16 *N. J. Mis. R.* 511; 2 *Atl. Rep.* (2d) 649, set the verdict aside and granted a new trial.

The third trial required the better part of seven days for its disposition, and the jury after deliberating five hours, again brought in a verdict of $25,000 in favor of the plaintiff and against both defendants.

Plaintiff was employed by the defendant insurance company from 1923 to 1934 as a collector and solicitor in and about the vicinity of Freehold, N. J. In the year 1934 and for some time prior thereto the defendant Vincent B. Smith was the manager of the Metropolitan Life Insurance Company at the Freehold office.

Plaintiff ceased to be employed by the insurance company in March, 1934. Plaintiff contends he was discharged because he refused to solicit insurance on Good Friday. Defendants contend he was discharged because a shortage had been discovered in his accounts.

In any event plaintiff, as the result of an investigation which had been made by the defendant Smith, was subsequently arrested and confined in the Freehold jail. Bail was furnished and in April, 1935, the plaintiff was indicted and gave bail before the Court of Quarter Sessions. He was subsequently tried and acquitted before a jury on May 13th, 1935.

Two indictments were returned against the plaintiff by the grand jury of Monmouth county, the second of which has never been moved, and still remains untried.

Testimony offered during the course of the trial would have justified the jury in finding that the arrest of the plaintiff had only been authorized by the defendants, after the plaintiff had been involved in a number of transactions connected with the defendant insurance company, which seriously reflected on plaintiff's integrity.

The jury could have found that the charges of forgery made against the plaintiff were instituted in good faith and on the assumption that the plaintiff was guilty as charged, and that there was reasonable or probable cause for the plaintiff's arrest and prosecution. The jury could have found that the defendants only proceeded to order the arrest of the plaintiff after all the material facts within the knowledge of the defendants had been submitted to counsel, and that acting

upon the advice of counsel the prosecution of the plaintiff had been instituted.

But the jury instead chose to believe and accept the testimony offered by the plaintiff that there was no reasonable or probable cause for his prosecution; that the charges made against him were false and were not made in good faith but rather from a motive of malice. The case presented a clear, clean-cut question of fact which was resolved by the jury in favor of the plaintiff.

The evidence disclosed that the defendants did not seek the advice of any handwriting expert before charging the plaintiff with the crime of forgery.

At the first two trials no handwriting expert was produced by either side, but at the third trial the jury had the benefit of the testmony of an expert produced by the plaintiff, and another expert offered by the defendants. The plaintiff's expert testified that the forged signatures alleged to have been made by the plaintiff were not in the plaintiff's handwriting. The defendants' expert testified that the disputed signatures were not made by one Skalkovich, to whose order the checks in question had been made out, and that the alleged endorsements of Skalkovich on those checks were forgeries. He said further that he could not say with certainty that the forgeries were made by the plaintiff, but that as between Skalkovich and the plaintiff, the weight of the evidence was toward the plaintiff.

Plaintiff claimed a loss of approximately $2,500 in connection with the foreclosure of his home. This claim for damages was not justified by the evidence. The assistant secretary of the building and loan association testified that at the time of the plaintiff's arrest in August, 1934, the plaintiff was fifteen months in arrears in his payments to the building and loan association, and that the bond and mortgage provided that foreclosure proceedings could be instituted any time that arrears of six months or more existed.

This witness further testified that it was necessary for the building and loan association to advance the sum of $117.46 for taxes and insurance. The 1933 taxes on the plaintiff's property were paid by the association to keep the borough

from selling the property, and the plaintiff had also failed to pay the premiums required to keep his property protected by insurance.

These conditions existed before the date of plaintiff's arrest in August, 1934, and it is quite apparent that the plaintiff cannot, therefore, reasonably attribute the loss of his home to his arrest and imprisonment. The entire claim for $2,500 damages in this respect will therefore be disallowed and the verdict reduced accordingly.

So far as compensatory damages are concerned, it was proper for the jury from the evidence to compensate the plaintiff, for his arrest and detention in jail until released on bail, and for his humiliation and mental suffering. Plaintiff could also be compensated for impairment of his social and business standing. In this connection the testimony discloses that with the exception of employment with one insurance company for a brief interval, he has found it impossible, despite his ability to speak several foreign languages, and his long experience, to secure employment with any other insurance company.

The plaintiff claimed that he earned over $3,500 yearly on an average basis. But I feel that the testimony of John W. Twyford, who is the audit section head of the Metropolitan Life Insurance Company, is more accurate on this point. Mr. Twyford testified that the average earnings of the plaintiff for the ten years prior to 1934, as taken from the official records of the company, were $2,510 yearly. Thus the claim of the plaintiff for loss of earnings represented a considerable amount.

In addition, in this type of case, the jury was justified in awarding punitive damages to the plaintiff. Separate awards of punitive and compensatory damages had not been requested, but the jury had been instructed as their right to assess punitive damages against the defendants, and I feel that the verdict as rendered undoubtedly includes a punitive award as well as compensatory damages.

I feel that the verdict of $25,000 is excessive. I have considered fully the different grounds of damages which were properly compensable, and the plaintiff's lawful claim, as well,

to punitive damages. I have decided that it is necessary not only to eliminate the plaintiff's claim for $2,500 damages for the loss of his home, but to further decrease the plaintiff's award by the sum of $5,000, thus reducing the verdict to the sum of $17,500.

The plaintiff having signified his acceptance of the reduced verdict the rule to show cause is discharged.

Judge Palmer in setting aside the verdict of $25,000 recovered on the second trial, ruled that costs were to abide the event. In view of the verdict recovered by the plaintiff on the third trial, counsel for the plaintiff may submit an order which will provide for the allowance of costs on the second trial, as well as the third trial.