37 N.J. Super. 249 (1955)
117 A.2d 298
ABRAHAM CABAKOV, PLAINTIFF-APPELLANT,
v.
CATHERINE R. THATCHER AND JOHN THATCHER, HER HUSBAND, DEFENDANTS-DESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued August 29, 1955.
Decided October 10, 1955.
*253 Before Judges GOLDMANN, EWART and TOMASULO.
Mr. Michael G. Alenick argued the cause for appellant.
No brief or appearance for respondents.
The opinion of the court was delivered by EWART, J.S.C. (temporarily assigned).
This was a suit for malicious prosecution in which the plaintiff sought both compensatory and punitive damages. After a five-day trial, the jury returned a verdict as follows:
"We the jury unanimously find the defendants, John Thatcher and Catherine Thatcher are guilty of malicious prosecution in all 3 counts.
Further we find compensatory damages in favor of the plaintiff, Abraham Cabakov, against the defendant John Thatcher the amt. of $350.00 and further compensation damages against the defendant Catherine Thatcher in the amt. of .06 on each complaint signed by her.
Further in the matter of punitive damages we find in favor of the plaintiff Abraham Cabakov, against the defendant John Thatcher the sum of $10,000.00.
As to Catherine Thatcher, .06 cents verdict molded to read six cents on two counts equal .12 cents. And so say we all."
Defendants thereupon moved for a new trial on the grounds, inter alia, that the verdict was against the weight of the evidence and was excessive in amount. The trial judge in an oral opinion denied the motion as to that part of the verdict awarding compensatory damages, holding the verdict was supported by the proofs, but as to the part of the verdict awarding punitive damages the trial court said it:
"* * * must consider whether or not under the conditions and the circumstances and considering also the fact that malicious prosecution matters are not looked upon favorably in the law and that punitive damages are allowable  taking all of those matters into consideration and these matters not being ascertainable by any particular standard, in awarding the amount of $10,000. punitive damages it appears as an irresistible, clear and convincing inference the verdict was the result of mistake, partiality, prejudice or passion, and a new trial is awarded upon the basis of damages, punitive damages only. I will sign such an order."
*254 With permission of this court, granted pursuant to R.R. 2:2-3 (b), plaintiff now appeals from the interlocutory order setting aside the verdict and granting a new trial as to punitive damages.
This action was based upon three criminal complaints which the defendants, husband and wife, swore out against the plaintiff. On January 11, 1950 defendant John Thatcher swore to a complaint before a local magistrate charging the plaintiff with having willfully and maliciously destroyed a new fence line and with letting cattle into the highway; on the same date defendant Catherine R. Thatcher swore to a complaint before a local magistrate charging the plaintiff with having willfully and maliciously destroyed certain boundary markers; and thereafter, following trial of an ejectment suit instituted by defendant Catherine R. Thatcher against the plaintiff, on or about April 10, 1951 she swore to a further complaint before a local magistrate charging the plaintiff with having committed perjury in the trial of the ejectment suit. Warrants issued against the plaintiff on each of these three complaints and plaintiff was twice taken into custody, once on the first two complaints and again on the third complaint. He was finger-printed by the police and held for the grand jury on each of the three complaints. Apparently he was not incarcerated, presumably having furnished bail.
On the first two complaints, plaintiff and his witnesses were present before the magistrate but neither of defendants appeared to support their charges nor were other witnesses called to support the charges. Nevertheless the magistrate held the plaintiff for the grand jury on each complaint. With respect to the third complaint, both defendants attended the hearing before the magistrate; there was a formal hearing at which both sides to the controversy were represented by counsel; and again the magistrate held the plaintiff for the grand jury.
Subsequently, and prior to the institution of this suit, the grand jury considered each of the three complaints and refused to indict on any of them.
At the trial Mrs. Thatcher took the stand and admitted *255 that she had not seen the plaintiff destroy any boundary markers and she said she swore out the first complaint because her husband, the defendant John Thatcher, told her to. And with reference to the complaint for perjury made by Mrs. Thatcher against the plaintiff, defendant John Thatcher took the stand and testified he must have advised his wife to make that complaint. And he did not deny that he had told her to make the first complaint.
So much of the facts are undisputed.
The controversy between the parties to this action goes back to the year 1946. The plaintiff and his parents had owned and occupied for many years prior to 1946 a mill pond property in Warren County comprised of a 12-acre mill pond together with some six or seven acres of upland improved by a large three-story stone mill building together with a dwelling house and outbuildings. In or about the year 1945 defendants purchased and occupied an adjoining farm which they operated as a dairy farm. There were credible proofs from which the jury could have found that in the spring of 1946 defendant John Thatcher sought plaintiff's permission to use a private lane across the plaintiff's field and that when permission was refused, Thatcher answered that he would use it anyway; that in the year 1947 John Thatcher approached the plaintiff and endeavored to rent from the plaintiff the top floor of the mill for the stated purpose of setting up and operating an illicit still and that although the plaintiff refused to entertain that proposition, nevertheless Thatcher persisted for a long time in pressing and urging the plaintiff to rent him the top floor of the mill for the purpose stated; that in 1948 John Thatcher proposed to the plaintiff that they together obtain a retail consumption liquor license for the plaintiff's mill property and that they operate the middle floor of the mill as a tavern and dance hall and use the mill pond for boating and recreation purposes, the defendant John Thatcher stating that they could make a lot of money in such an enterprise; that although the plaintiff refused to entertain this latter proposition, defendant John Thatcher continued to press the proposition upon the plaintiff *256 over a long period of time to the plaintiff's considerable annoyance; that John Thatcher endeavored on more than one occasion to purchase the property from the plaintiff but plaintiff refused to sell; that in the spring of 1949 John Thatcher erected a new wire fence supported by iron posts, which fence departed from the well-marked boundary line of the lands of the respective parties and jutted out onto the plaintiff's land, running across the creek on the plaintiff's lands, but that when the plaintiff protested Thatcher removed the fence; that later in the same year Thatcher built another fence across the plaintiff's lands which fence extended into the middle of the creek, and that while plaintiff was in the act of removing the last mentioned fence from his lands, defendant John Thatcher appeared on the scene with two of his employees, struck at the plaintiff with a double-bladed ax and caused the plaintiff to fall backward down the bank into the creek; that following the incident last mentioned, and in the month of January 1950 two state troopers came to the plaintiff's home late at night with warrants for his arrest on the first two complaints above mentioned made by the defendants (actually they did not arrest him on that occasion but instructed him to report at the police station the next morning); that in December of 1950 Mrs. Thatcher instituted a suit in ejectment against the plaintiff which he successfully defended at a very considerable expense to himself; and that on one of the occasions when the plaintiff had refused to sell his property to the defendant John Thatcher, the latter informed the plaintiff that he had political connections and was accustomed to getting what he wanted.
Plaintiff testified that he had been a healthy person prior to his controversy with the defendants; that he became ill as the result of the pressure to which the defendants subjected him and the criminal prosecutions they instituted against him; that he lost 40 pounds in weight and had to have medical attention; that he was unable to carry on his work; that he felt he had been disgraced in the community by reason of the criminal proceedings against him; that people in the neighborhood jibed at him; and that as a result of these *257 various matters he became so nervous that he was unable to sleep at night. However, on cross-examination, plaintiff pretty clearly indicated that he felt there was no malice against him on the part of the defendant Mrs. Thatcher and that it was the defendant John Thatcher who had instigated the various actions against him.
Our examination of the record satisfies us that the proofs sufficed to warrant the jury in finding that defendants were actuated by improper motives and to support an inference of malice and a lack of probable cause. The trial judge was of like opinion and by his instructions left it open to the jury to assess punitive damages against John Thatcher if the jury found actual malice and lack of probable cause for the swearing out of the criminal complaints.
Advice of counsel was pleaded as a defense in this suit, and there was some testimony in support of that defense, but a reading of the record discloses that a question existed as to whether the defendants had made a full and fair disclosure to counsel of relevant and material facts within their knowledge. Therefore, it became a question for the jury as to whether that defense could prevail. Dombroski v. Metropolitan Life Ins. Co., 18 N.J. Misc. 240 (Circ. Ct. 1940), affirmed 126 N.J.L. 545 (E. & A. 1941); 34 Am. Jur. 752, section 78.
Generally, in actions to recover for personal torts, there are no fixed standards by which to gauge damages but of necessity the amount of the damages to be awarded is, within reasonable limits, left to the sound discretion of the jury. And the court in such a case will interfere with the verdict on the mere ground of excessive damages only with reluctance and never except in a clear case. Berry v. Vreeland, 21 N.J.L. 183, 187 (Sup. Ct. 1847); Salvato v. New Jersey Asphalt & Paving Co., 135 N.J.L. 185, 189 (E. & A. 1947); Dandrea v. Centofante, 13 N.J. Super. 445, 447 (App. Div. 1951); Moore v. Public Service Coordinated Transport, 15 N.J. Super. 499, 504 (App. Div. 1951); Brendel v. Public Service Electric & Gas Co., 28 N.J. Super. 500, 514 (App. Div. 1953).
*258 The mere fact that the award of damages in a tort action may appear to the court to be somewhat immoderate and excessive, while a circumstance to be considered, does not conclusively indicate that the verdict was the product of mistake, partiality, prejudice or passion. Salvato v. New Jersey Asphalt & Paving Co., supra, 135 N.J.L., at page 189; Bardack v. Extract, 13 N.J. Super. 350, 355 (App. Div. 1951); Moore v. Public Service Coordinated Transport, supra, 15 N.J. Super., at page 505.
Neither the trial court nor an appellate court may invade the constitutional function of the jury and substitute its judgment for that of the jury as to the amount of damages to which plaintiff may be entitled in an action to recover for a personal tort unless the verdict be so excessive in amount as inevitably to give rise to the inference of mistake, passion, prejudice or partiality, and by that standard to be palpably against the weight of the evidence. Hager v. Weber, 7 N.J. 201 (1951); Moore v. Public Service Coordinated Transport, supra, 15 N.J. Super., at page 505; R.R. 4:61-1 (a). While the power of the trial court to set aside a verdict as against the weight of the evidence has been limited by the rule last cited, the authority of an appellate court in reviewing the order of a trial judge in passing on motion for a new trial is even more limited. In Hartpence v. Grouleff, 15 N.J. 545, 549 (1954) the rule was there laid down that the action of a trial judge in granting a new trial should not be disturbed "unless it clearly and unequivocally appears there was a manifest denial of justice under the law."
In awarding damages for the injurious consequences of personal torts, and likewise in assessing punitive damages, a jury may properly give consideration to the presently greatly depreciated purchasing power of the dollar. Bowes v. Public Service Railway Co., 94 N.J.L. 378, 379 (Sup. Ct. 1920); Hannon v. Delaware, L. & W.R.R. Co., 98 N.J.L. 191, 195 (E. & A. 1922); Nusser v. United Parcel Service of N.Y., Inc., 3 N.J. Super. 64, 69 (App. Div. 1949); Dandrea v. Centofante, supra, 13 N.J., at page 447.
*259 Where, in a proper case, a jury sees fit to assess punitive or exemplary damages against a defendant, there is even less of a standard for the guidance of the jury than exists in awarding compensatory damages in actions for personal torts. Punitive damages are not intended to compensate a plaintiff for injuries inflicted at the hands of the defendant but rather as a penalty or fine visited upon the defendant for his wrongful and malicious conduct and as a deterrent against such action in the future. Wax v. Altshuler, 22 N.J. Super. 229 (App. Div. 1952); 34 Am. Jur. 761, section 95.
The late Mr. Justice Garrison characterized punitive damages as "a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine." Haines v. Schultz, 50 N.J.L. 481, 484 (Sup. Ct. 1888).
It is elementary that the amount of punitive damages assessed against a defendant in a proper case is a matter resting in the sound discretion of the jury. There is no established standard by which the amount of punitive damages may be fixed. 3 Restatement, Torts, section 673 (2) (e); 34 Am. Jur. 761, section 95; 25 C.J.S., Damages, § 126, p. 737.
In sustaining a verdict for $25,000 in a suit for false arrest and malicious prosecution, our former Supreme Court after reviewing the elements of compensatory damages remarked:
"To this, of course, may be added whatever the jury may have determined as proper by way of exemplary damages."
Sheean v. Holman, 6 N.J. Misc. 346, 349 (Sup. Ct. 1928).
However, there can be no doubt of the right of the trial court to set aside a verdict for punitive damages where the amount of the award is manifestly outrageous (Allen v. Craig, 13 N.J.L. 294, 301 (Sup. Ct. 1833)); or is grossly excessive (15 Am. Jur. 738, sections 297-298; 25 C.J.S., Damages, § 126, p. 737); or is so obviously disproportionate to the injury inflicted as to shock the conscience of the court (34 Am. Jur. 765, § 103; 54 C.J.S., Malicious Prosecution, § 115, p. 1107. See also Gallichio v. Gumina, 35 *260 N.J. Super. 442, 448 (App. Div. 1955), and R.R. 4:61-1(a)).
But as long ago as 1833 our former Supreme Court in Allen v. Craig, supra, 13 N.J.L., at page 301, remarked that:
"* * * When a jury gives exemplary damages, the court has no graduated scale by which to measure them, and its general and safest rule is not to interfere unless they are manifestly outrageous."
Those remarks were quoted with approval by the late Mr. Justice Parker in Boniewsky v. Polish Home of Lodi, 102 N.J.L. 241, at page 244 (Sup. Ct. 1925).
In the case at bar, the trial court by its charge left it open to the jury to assess punitive damages if the jury saw fit so to do. And the jury did see fit to do so. Then, on defendants' motion to set aside the verdict in toto on the grounds, inter alia, that the verdict was against the weight of the evidence and was for an excessive amount, the trial court refused to disturb the verdict for compensatory damages but did set aside the verdict as to punitive damages only but without having assigned any reasons therefor (see R.R. 4:61-1(c)), except to state in the language of R.R. 4:61-1(a) that an award of $10,000 of punitive damages made it appear as an irresistable, clear and convincing inference that the verdict was the result of mistake, partiality, prejudice or passion. Specifically, the trial court did not find that the award was manifestly outrageous, nor grossly excessive, nor so obviously disproportionate to the injury inflicted as to shock the conscience of the court. Although the trial court's opinion does not state the ground of its action, from the circumstance that the charge left it open to the jury to assess punitive damages, and the further circumstance that the court found the verdict for compensatory damages was not against the weight of the evidence, we assume that the trial court considered the verdict for punitive damages excessive in amount. If that be true, it is to be regretted that the court did not see fit to exercise its authority of giving the plaintiff his choice of accepting such reduced amount as the court might fix or of having the verdict set aside (see Dombroski *261 v. Metropolitan Life Ins. Co., supra). Such action by the trial court might have avoided the expense of this appeal.
Nor is there anything in the opinion of the trial court to indicate any distinction in the court's mind between the setting aside of a verdict for compensatory damages and the setting aside of a verdict for punitive damages, although we think the authorities are clear that the court should proceed with much more caution in disturbing a verdict for punitive damages than one for compensatory damages because both the award of punitive damages and the amount thereof rest in the area of the jury's discretion and are not intended as compensation to the plaintiff for a wrong inflicted upon him by the defendant but rather partakes of the nature of a fine or penalty.
In view of the unwarranted, persistent and oppressive conduct of the defendant John Thatcher against the plaintiff, we are unable to perceive that an award of $10,000 of punitive damages was manifestly outrageous, or grossly excessive, or so obviously disproportionate to the injury inflicted as to shock the conscience of the court.
In view of all of the circumstances of this case including the fact that the trial judge in setting aside the verdict for punitive damages failed to specify the reasons for his action and apparently failed to distinguish between the guiding principles involved in interfering with a verdict for punitive damages as distinguished from one for compensatory damages, and of the further fact that a retrial of this case limited to punitive damages would probably require another five days of trial, as did the original trial, with its attendant expenses, we conclude that it may fairly be said in this case that the setting aside of the verdict for punitive damages has clearly worked a manifest denial of justice to the plaintiff under the law and that the action of the trial court cannot be sustained. Hartpence v. Grouleff, supra.
Accordingly, the order of the trial court setting aside the verdict for punitive damages is reversed.