363 F.Supp. 96 (1973)
Frederick E. HERNON, Plaintiff,
v.
REVERE COPPER & BRASS, INC., Defendant.
No. 72 C 101(3).
United States District Court, E. D. Missouri, E. D.
July 30, 1973.
*97 Lon Hocker, St. Louis, Mo., for plaintiff.
Robertson, Ely & Wieland, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
This matter is before the court on defendant's motion for judgment in accordance with its motion for a directed verdict, and defendant's alternative motion for a new trial. See Fed.R.Civ.P. 50(b).
Plaintiff brought this action to recover damages alleged to have been suffered as a result of defendant's malicious prosecution of an action in a New Jersey state court for the purpose of interfering with plaintiff's business relationship with International Aluminum, Ltd. Plaintiff claimed that defendant acted maliciously and demanded punitive damages. The case was tried to a jury, which awarded plaintiff actual damages of $550,000.00, and in addition awarded punitive damages of $75,000.00.

I

Motion for Judgment N.O.V.
Defendant contends that the evidence was insufficient to sustain a verdict for actual or punitive damages. More specifically, defendant contends the proof showed conclusively that in filing its action against plaintiff it acted with probable cause upon advice of counsel. Defendant further contends that plaintiff failed to prove two other essential elements of a malicious prosecution action: malice and favorable termination. Finally, defendant contends that plaintiff failed to show damage attributable to defendant's acts.
Facts. Briefly summarized, the evidence showed that plaintiff, a business consultant, had become active in the aluminum business. In 1966, he acquired all of the voting stock of Alsco of Colorado, Inc., a fabricator of storm windows and doors. In 1967, this corporation acquired 47% of the stock of WinCheck Industries, a New Jersey corporation. The two corporations merged, becoming International Aluminum, Ltd. ("I.A.L."). As of April 9, 1969, plaintiff owned 313,271 of the 1,263,521 issued shares of I.A.L. Of the issued shares, 216,968 shares were treasury shares. During the period in question, plaintiff was chief executive officer of I.A.L.
In 1967, I.A.L. began opening distribution outlets to handle defendant Revere's products. In 1968, I.A.L. and defendant entered into a written contract. The practice before and after the contract was for defendant to ship materials to I.A.L. on a retained title basis, with provision for payment out of sales of fabricated products by I.A.L. I.A.L. began to experience financial difficulties and was in arrears in payments to defendant and others.
Plaintiff testified that part of I.A.L.'s difficulties was attributable to defendant's failure to meet quantity and quality requirements, and that he had complained to defendant to no avail.
On April 4, 1969, plaintiff issued a press release suggesting the likelihood of legal action against defendant, and sent a letter of similar substance to defendant.
Dominic Joseph Virga, a former plant manager and national siding coordinator of I.A.L., testified that in April, 1969, he received orders from Donald Porter, President of I.A.L., to sell all Revere siding at any price he could get for it. Virga called John W. Eason, Executive Vice President of defendant, and informed him of this development. Eason passed this information to company attorneys. He wired I.A.L. to cease such distress sales. Plaintiff wired the I.A. L. outlets to ignore Revere's instructions. Defendant's attorneys thereupon consulted with a local New Jersey firm for the purpose of protecting defendant's interests.
From the undisputed testimony of Bergen County attorney, Frank Vecchione, it may reasonably be concluded *98 that defendant presented all the known material facts, including the report by Virga, to local counsel. Vecchione thereupon filed a petition for injunction on defendant's behalf, naming I.A.L. and plaintiff Hernon as co-defendants. The Judge of the Superior Court of Bergen County, New Jersey refused to grant an ex parte restraining order. After considering other avenues of relief to preserve the property, the local attorneys prepared and filed an amended complaint, which sounded in replevin. Following the New Jersey statute, the attorneys were thereby able to obtain an ex parte order of delivery of possession. The attorneys and local officers served the order on plaintiff and thereupon took possession of the property claimed by Revere. Shortly thereafter, I.A.L. was sued in involuntary bankruptcy, and a receiver was appointed. The district court issued a broad restraining order, which stayed defendant's pending suit in New Jersey. Defendant's attorneys thereupon dismissed their complaint against the individual defendants in that suit, including Hernon.

A. Probable Cause and Advice of Counsel.

The general principles applicable to an action for malicious prosecution are set forth in Restatement, Torts, § 674:
"§ 674. GENERAL PRINCIPLE.
One who initiates or procures the initiation of civil proceedings against another is liable to him for the harm done thereby, if
(a) the proceedings are initiated
(i) without probable cause, and
(ii) primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings are based, and
(b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."
As to the existence of probable cause, the Restatement states:
"§ 675. EXISTENCE OF PROBABLE CAUSE.
One who initiates civil proceedings against another has probable cause for so doing if he reasonably believes in the existence of the facts upon which his claim is based, and
(a) reasonably believes that under such facts the claim may be valid at common law or under an existing statute, or
(b) so believes in reliance upon the advice of counsel given under the conditions stated in § 666."
Advice of counsel is an affirmative defense discussed in Comment g of section 675:
"g. Advice of counsel. The advice of counsel gives to one who initiates civil proceedings a protection similar to that which it gives to a private prosecutor of criminal proceedings. There is, however, this difference between the two situations. Where the proceedings are criminal, the advice which usually affords protection is that the facts known or reasonably believed by the prosecutor constitute the crime charged (see Comment b on § 666). Where the proceedings are civil the advice of counsel is a protection even though it consists merely of an opinion that the facts so known or believed afford a chance, whether great or small, that the claim asserted in the civil proceedings may be upheld. With this difference, the Comments on § 666 are pertinent to this Section."
Accord: 52 Am.Jur., 2d, Malicious Prosecution, § 78. Rogers v. General Electric Company, 341 F.Supp. 971 (W.D. Ark.1972). New Jersey law appears not to be to the contrary. See: Cabakov v. Thatcher, 37 N.J.Super. 249, 117 A.2d 298 (1955); Evans v. New Jersey Central Power and Light Company, 119 N. J.L. 88, 194 A. 144 (1937).
Where there is dispute in the evidence as to whether the relevant and material facts within a defendant's knowledge were presented to counsel, the *99 defense of advice of counsel should be submitted to the jury for a factual determination. See: Bennett v. Pillion, 105 N.J.L. 359, 144 A. 601 (1929); Dombroski v. Metropolitan Life Insurance Company, 126 N.J.L. 545, 19 A.2d 678 (1941); Mayflower Industries v. Thor Corp., 15 N.J.Super. 139, 83 A.2d 246 (1951). A review of the uncontroverted evidence in this case convinces the court that defendant's action in filing suit against plaintiff followed a full and truthful disclosure to local counsel of all material and relevant information; that the defendant acted and relied entirely upon the advice of licensed attorneys following such disclosure. Defendant reasonably believed the information supplied to the attorneys. Such reliance is a complete defense to the action, because it defeats the requirement that the proceedings be initiated "without reasonable or probable cause."[1]

B. Malice.

Defendant contends plaintiff failed to make a submissible case on malice. The court has concluded, supra, that defendant brought the action upon probable cause in view of its reasonable belief in the existence of facts upon which its claim was based and reasonable reliance upon advice of counsel following full disclosure of such information. The evidence would compel such finding by a jury.
There was still another burden which plaintiff failed to carry: he was required to prove that the suit was actuated by malice. Mayflower Industries v. Thor Corp., supra, at 252. Putting it in another way, plaintiff must show that "the proceedings must have been initiated primarily for a purpose other than that of securing the adjudication of the claim on which they are based." Restatement, Torts, § 676.
Propriety or purpose (or malice) is a separate element, which must be shown in addition to the issue of probable cause. Plaintiff urged that the net purpose of the suit was to dislodge plaintiff from control of I.A.L. and thereby abort his threat to sue defendant. This was a matter for the jury, and in the court's opinion there was enough evidence to present that issue to them. This point is ruled against defendant.

C. Termination of Suit Favorable to Plaintiff Hernon.

Defendant contends that the dismissal of the New Jersey action, under the circumstances of a stipulation signed by plaintiff's attorney, was not a "terminat[ion] in favor of the person against whom [it was] brought." Restatement, Torts, § 674. The dismissal was in the form of a court memorandum dated June 24, 1969 (Plaintiff's X-7), signed by attorneys for Revere and Hernon, providing that it was "stipulated and agreed" that the case be dismissed as to defendants Frederick E. Hernon, Harold M. Unger and Donald N. Porter "without prejudice and without costs to either party." A favorable termination does not necessarily require an adjudication on the merits. But whether a withdrawal or abandonment constitutes a favorable termination depends upon the circumstances. See Comment on Clause (b), Restatement, Torts, § 674. A dismissal without prejudice and without assessment of court costs is generally considered a legal stand-off. On the other hand, it can hardly be argued that proof of this essential element can be defeated by "hit and run" tactics. The court concludes that plaintiff's evidence on this issue was sufficient to be submitted to the jury, and this point is likewise ruled against defendant.

D. Damages.

Finally, defendant argues that the evidence does not support a finding of damage to plaintiff. On damages, Restatement, Torts, § 681 provides:
"§ 681. DAMAGES.
When the essential elements of a cause of action stated in § 674 have *100 been established, the plaintiff is entitled to recover for
(a) the harm normally resulting from any arrest or imprisonment, or any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings, and
(b) the harm to his reputation by any defamatory matter alleged as the basis of the proceedings, and
(c) the expense which he has reasonably incurred in defending himself against the proceedings, and
(d) any specific pecuniary loss which has resulted from the proceedings, and
(e) any distress which is caused by the proceedings."
In this case, there was considerable confusion about the nature of the loss and the recoverability of certain damages. Plaintiff had approximately a one-third ( 1/3 ) interest in the holding company, which evaporated following the lawsuit. It is stated in Fletcher Cyc Corp (Perm. Ed 1970) § 5913  Depreciation of value of stock:
"Generally, a stockholder cannot sue in his own name, and in his own behalf, to recover for any loss resulting from depreciation of the value of his stock, as a result of an injury to the corporation itself. This is true although the act complained of was done with the specific intent of injuring plaintiff as a stockholder. Likewise, the fact that the plaintiff claims to be the sole minority stockholder does not give him the right to maintain a personal action. * * * *
"It is only where the injury sustained to one's stock is peculiar to him alone, and does not fall alike upon other stockholders, that he can recover as an individual.
"This rule does not apply where the wrongful acts are not only wrongs against the corporation but are also violations by the wrongdoer of a duty arising from contract or otherwise, and owing directly by him to the stockholders." (Footnotes omitted)
And at § 5914  Effect intent to injure stockholder:
"If the plaintiff has sustained no loss in addition to the loss of the corporation, the action cannot be maintained as an individual even though the wrongful acts were done with the specific intent of injuring the plaintiff. However, there is ground for a good argument to the contrary, based on general rules as to torts." (Footnotes omitted)
In § 5915, Fletcher enumerates individual causes of action. In none of these does the court find any approximation of the facts in this case, except perhaps illustration # 8: Acts depriving a stockholder or member of rights as such, including acts depriving one of the advantage of a majority control. Gieselmann v. Stegeman, 443 S.W.2d 127 (Mo. 1969). (In that case, the fraudulent issue of additional stock resulting in dilution and loss of control was held a sufficient basis for an action.)
In § 5920, it is written that "[a] stockholder who is also a creditor may avail himself of the remedies, applicable to creditors, unless otherwise provided by statute." Fletcher here cites Dustin v. Randall Faichney Corp., 263 Mass. 99, 160 N.E. 528 (1928) where it was held that a president and principal stockholder who had deposited personal funds as security to release a judgment lien upon property of the corporation pending an appeal did not have a right of action on ground of subrogation against the corporation's insurer for negligence and bad faith in handling an offer to settle the claim against the corporation. Lee v. Treshermen's Mutual Insurance Co., 26 Wis.2d 361, 132 N.W. 2d 534 (1965).
§ 5921  Wrongs both to stockholder as individual and to corporation. It has been held that a stockholder may have a personal cause of action against a third person to recover damages for breach of contract even though a corporate cause of action and the stockholder's cause of *101 action result from the same wrongful acts, such as for mismanagement of the corporate business and diversion of assets in breach of an express contract with the stockholder, resulting in the latter's liability on his guarantee to pay corporate indebtedness. See Buschmann v. Professional Men's Association, 405 F.2d 659 (7th Cir. 1969).
Research fails to disclose any analogous case, absent an internal effort to seize "control" from a shareholder, or some liability resulting to the shareholder in some other relationship, wherein the shareholder could claim the diminution of value of his stock as a personal item of damage. While there was evidence of other damage to plaintiff, such as humiliation and loss of his reputation as a business consultant, these items collectively could not possibly aggregate the $550,000 awarded by the jury as actual damages.
On the issue of exemplary damages ($75,000), we first turn to the New Jersey test as set forth in Di Giovanni v. Pessel, 55 N.J. 188, 260 A.2d 510 at 511 (1970):
"An act to give rise to punitive damages must be actuated by
`(1) actual malice, which is nothing more or less than intentional wrongdoing  an evil-minded act; or
`(2) an act accompanied by wanton and willful disregard of the rights of another.'"
New Jersey thus requires more than mere legal malice. Measured against this test, there was no evidence sufficient to support a verdict for exemplary damages.

Conclusion
"In ruling on the sufficiency of the evidence the trial court must take the record as presented to the jury and cannot enter judgment on a record altered by the elimination of incompetent evidence." Midcontinent Broadcasting Company v. North Central Airlines, Inc., 471 F.2d 357 (8th Cir. 1973). Plaintiff has been given the benefit of all reasonable inferences from the evidence. Giordano v. Lee, 434 F.2d 1227, 1231 (8th Cir. 1970).
The court concludes that there was insufficient evidence to support a verdict in favor of plaintiff on the issue of liability because the plaintiff failed to sustain his burden of showing that the civil action initiated by defendant was brought without probable cause. The defendant affirmatively established that it reasonably believed in the existence of the facts upon which its claim was based and so believed in reliance upon the advice of counsel after a full and truthful disclosure.
On the issue of damages, the court concludes that, assuming liability, the evidence would support a verdict for some damages, although the actual damages awarded were grossly excessive. The court further concludes that the evidence was insufficient to support a verdict for exemplary damages.
The Clerk is directed to set aside the verdict and judgment of February 27, 1973 and to enter a new judgment herein in favor of defendant and against the plaintiff.

II

Alternative Motion for New Trial
In its alternative motion for a new trial filed March 5, 1973, defendant assigned some twenty grounds for error; and in an "addition to motion of defendant for a new trial" filed March 8, 1973, defendant assigned six additional grounds based on excessiveness of the verdict.
A primary difficulty in the trial of this case was the inextricable relationship of plaintiff to I.A.L. While the jury was reminded and charged from time to time that the injury to I.A.L. caused by the suit (in which I.A.L. and Hernon were co-defendants) was not plaintiff's injury, the lawyers on both sides repeatedly fell into the trap of assuming the opposite, or of permitting the jury to infer the opposite. Since it was possible that plaintiff could show a *102 derivative injury, the court permitted the plaintiff and others to testify as to value of the I.A.L. stock, money owed to plaintiff by I.A.L. and similarly related matters. The excessiveness of the verdict shows how badly this confused the jury. The verdict was contrary to the clear weight of the evidence and the verdict as to damages was likewise so excessive as to indicate that the jury was influenced by evidence erroneously admitted or by erroneously permitted argument of attorney for plaintiff or both. A miscarriage of justice has occurred. See Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc., 466 F.2d 179, 187 (8th Cir. 1972).
Therefore, if the judgment entered pursuant hereto shall be vacated or reversed on appeal, defendant's alternative motion for a new trial is granted.
So ordered.
NOTES
[1] Mayflower Industries v. Thor Corp., supra, at 262.