**LIGHTNING LUBE, INC., etc., Plaintiff, and Counterclaim Defendant,**

v.

**WITCO CORPORATION, et al., Defendants, Counter-claimants and Third-party Plaintiffs,**

v.

**Ralph VENUTO, et al., Third Party Defendants.**

**Civ. A. No. 87–3243 (WGB).**

United States District Court, D. New Jersey.

Sept. 2, 1992.

Steven M. Kramer & Associates by Jeffrey Nowak, Blackwood, N.J., Steven M. Kramer & Associates by Steven M. Kramer, New York City, for plaintiff.

Carella, Byrne, Bain, Gilfillan, Cecci & Stewart by John Gilfillan, Brendan T.

Byrne, Roseland, N.J., Cravath, Swaine & Moore by Ronald Rolfe, New York City, for defendants.

## OPINION

BASSLER, District Judge:

On May 1, 1992, a jury returned a verdict against the defendant Witco Corporation ("Witco") in favor of the plaintiff Lightning Lube, Inc. ("Lube") for $11.5 million dollars in compensatory damages and $50 million in punitive damages. Witco renews its motion for judgment as a matter of law and in the alternative moves for a new trial.

For the following reasons, Witco's motions shall be granted in part and denied in part.

## 1. BACKGROUND.

The background and procedural history of this case have been well documented in prior Opinions and Orders of this Court.[1,2] This action arises out of a contract dispute between plaintiff Lightning Lube, t/a Laser Lube ("Lube or Lightning Lube") and its principal, third-party defendant Ralph Venuto, and defendant counterclaimant third-party plaintiff Witco Corporation ("Witco")[3] over the supply of oil to Laser Lube by Witco's Kendall Refining division and the financing of lube dispensing equipment and lifts. Lube further alleged that Kendall and co-defendant Avis ("Avis")[4] entered into a joint venture to create a vertical monopoly in the quick lube market. At the time of trial, four claims remained in the case: (1) breach of contract; (2) fraud and misrepresentation (3) intentional interference with contracts and prospective contractual advantage and (4) punitive damages.[5]

## 2. DISCUSSION.

### I. THE STANDARDS.

#### A. *The Standards Governing Judgment as A Matter of Law.*

Federal Rule of Civil Procedure 50(b), as amended Dec. 1, 1991, provides:

Whenever a motion for directed verdict at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after the entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered in accordance with the party's motion for a directed verdict.... A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed....

■ The 1991 Amendment retains the concept of the former rule that the post-verdict motion is a renewal of an earlier motion made at the close of the evidence. *See* Comment to 1991 Amendment. Thus, a prerequisite for a motion under Rule 50(b) is that the moving party must first have moved for judgment as a matter of law (formerly directed verdict) at the close of all evidence. *Fineman v. Armstrong World Industries, Inc.*, 774 F.Supp. 225, 230 (D.N.J.1991) (quoting *Associated Busi-*

---

**1.** This Court conducted a jury trial from February 3, 1992 to May 1, 1992. There is a transcript of over 7,400 pages, and a set of jury instructions of 77 pages. Moreover, from the time this case was filed in August of 1987, the Court has ruled on 69 motions.

**2.** The parties presented all claims in the case under New Jersey law.

**3.** The third party action against Mr. Venuto and the counterclaim against Lightning Lube are not the subject of these motions and accordingly will not be discussed in this opinion.

**4.** Summary judgment was granted in favor of Avis.

**5.** The First Amended Complaint contained claims of Unfair Competition, RICO and Price and Service Discrimination. Summary Judgment was granted with respect to the RICO claim on 2/19/91 and judgment as a matter of law was granted with respect to the claims for Unfair Competition and Price and Service Discrimination on 4/3/92.

*ness Telephone Systems Corp. v. Greater Capital*, 729 F.Supp. 1488, 1502 (D.N.J.), *aff'd*, 919 F.2d 133 (3d Cir.1990)). In fact, "[i]t is not enough if a party moves for a directed verdict at the close of their case. Rather, in order to preserve the right to move for judgment as a matter of law, the moving party must renew his motion for directed verdict at the close of all the evidence." *Id.*

In this case, Witco moved for judgment as a matter of law both at the close of plaintiff's case and at the close of all the evidence. The Court reserved decision.

█ When ruling on a motion for judgment as a matter of law, the trial judge must determine whether the evidence and all justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict. *Id.*, (quoting *Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 259 (3d Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989) (citations omitted)).

█ In determining whether the evidence is sufficient the court is not free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. In other words, the fundamental principle is that there must be a minimum of interference with the jury. 9 Charles A. Wright & Arthur A. Miller, *Federal Practice and Procedure* § 2524, at 543–545 (1971), *see also National Freight v. Southeastern Pa. Transp. Auth.*, 698 F.Supp. 74, 76 (E.D.Pa. 1988), *aff'd*, 872 F.2d 413 (3d Cir.1989). Nevertheless, a scintilla of evidence is not enough to withstand a motion for judgment as a matter of law. *See Denneny v. Siegel*, 407 F.2d 433, 439–40 (3d Cir.1969).

Moreover, it is well settled that the party against whom a motion for "J.N.O.V." is made must be given the benefit of every legitimate inference that can be drawn from the evidence. 9 Charles A. Wright & Arthur A. Miller, *Federal Practice and Procedure* § 2528, at 564 (1971). Some courts say that an inference is legitimate only where the evidence offered makes the existence of the fact to be inferred more probable than the nonexistence of the fact,

and they warn that any lesser test would permit the jury to rest its verdict on speculation and conjecture. But the Supreme Court itself has suggested that a case may not be taken away from the jury merely because "a measure of speculation and conjecture is required." *Id.* at 565 n. 19, 566–67; *see also Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946). It is with this high standard in mind that I consider this motion.

### B. The Standards Governing a Motion for a New Trial.

A trial court should grant a motion for a new trial when, in its opinion, "the verdict is contrary to the great weight of the evidence, thus making a new trial necessary to prevent a miscarriage of justice." *Fineman v. Armstrong World Industries, Inc.*, 774 F.Supp. 266, 269 (D.N.J.1991), (quoting *Roebuck v. Drexel University*, 852 F.2d 715, 736 (3d Cir.1988)).

█ The standard for granting a new trial is substantially less demanding than that for judgment as a matter of law. 9 Charles A. Wright & Arthur A. Miller, *Federal Practice and Procedure* § 2531, at 575 (1971). In fact, contrary to the lack of discretion that a trial court has when ruling on a motion for judgment as a matter of law, when a trial court rules on a motion for a new trial it is vested with wide discretion. *Id.* This discretion is exemplified by the fact that in ruling on a motion for a new trial the trial court is permitted to consider the credibility of witnesses and weigh the evidence. *Id.* Such deference is appropriate because it is the district court that was able to observe the witnesses and follow the trial in a way that an appellate court cannot replicate by reviewing the record. *Roebuck v. Drexel University*, 852 F.2d 715 (3d Cir.1988) (citing *Semper v. Santos*, 845 F.2d 1233, 1237 and n. 35 (3d Cir.1988)).

█ The discretion of the court, however, is not unlimited. When a motion for a new trial based on the weight of the evidence is granted, the court has:

to some extent at least substituted [its] judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts.

*Fineman,* 774 F.Supp. 266 (D.N.J.1991), (citing *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352 (3d Cir.1991) (citation omitted)). Thus, as with a motion for judgment as a matter of law "[a] District Court may not substitute its own judgment for that of the jury simply because the court might have come to a different conclusion." *Id.* (quoting *Grace v. Mauser–Werke Gmbh,* 700 F.Supp. 1383, 1387 (E.D.Pa.1988)). Nor does a dispute over credibility justify a new trial. *Consumers Power Co. v. Curtiss–Wright Corp.,* 780 F.2d 1093, 1097 (3d Cir.1986) (citation omitted).

A motion for a new trial may be granted on a number of grounds:

> Although Fed.R.Civ.P. 59 does not enumerate the grounds for a new trial, the following have been recognized as general grounds for a new trial: the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions.

*Northeast Women's Center, Inc. v. McMonagle,* 689 F.Supp. 465 (E.D.Pa.1988), *aff'd in relevant part,* 868 F.2d 1342 (3d Cir. 1989).

## II. THE COMPENSATORY DAMAGE CLAIMS.

### A. The Claim for Fraud and Misrepresentation.

The jury awarded $1,000,000 to the plaintiff on its claim for fraud and misrepresentation with respect to Witco's failure to disclose its intent to enter into the quick lube business as a competitor of Lube. It also awarded $1,000,000 with respect to the claim that Witco had no intention to honor the agreement it formed with Lube at the time the agreement was made. On the claim for fraud and misrepresentation with respect to the source of oil, the jury found that all of the elements of fraud were satisfied but found that Lube suffered no damages.

In order to prove a claim for fraud, plaintiff must prove the following five elements:

(1) Defendant made a false representation of fact;

(2) Defendant knew or believed that the representation was false;

(3) Defendant intended to deceive the plaintiff;

(4) Plaintiff believed and justifiably relied upon the statement and was induced to take action upon it, and

(5) As a result of plaintiff's reliance upon such statements, it sustained damages.

*Jewish Center of Sussex County v. Whale,* 86 N.J. 619, 624, 432 A.2d 521 (1981). Moreover, plaintiff bears the burden of proving its case by a preponderance of the evidence. *Williams v. Witt,* 98 N.J.Super. 1, 235 A.2d 902 (App.Div.1967) *see also* Richard J. Biunno, *Current N.J. Rules of Evidence,* Comment 5 to Evid.R. 1(4) at 53 (Gann 1990) (citing 9 Wigmore on Evidence (3d ed. 1940), § 2498 at 325; *In re Evans,* 227 N.J.Super. 339, 347, 547 A.2d 344 (Law Div.1988)).

In other words a civil litigant must establish that a desired inference is more probable than not. If the evidence is in equipoise, the burden has not been met. *See Cvelich v. Erie Railroad Co.,* 120 N.J.L. 414, 199 A. 771 (Sup.Ct.), *aff'd,* 122 N.J.L. 26, 4 A.2d 271 (E. & A.1938), *cert. denied,* 307 U.S. 633, 59 S.Ct. 1033, 83 L.Ed. 1516 (1939). And the burden is not satisfied by guess or conjecture. For the burden of persuasion to be sustained, the evidence must demonstrate that the offered hypothesis is a rational inference, that it permits the triers of fact to arrive at a conclusion grounded in a preponderance of probabilities according to common experience. Richard J. Biunno, *Current N.J. Rules of Evidence,* Comment 5 to Evid.R. 1(4) at 54 (Gann 1990) (citing *Joseph v.*

*Passaic Hospital Ass'n.*, 26 N.J. 557, 141 A.2d 18 (1958)).

 While a trial judge in deciding on a motion for judgment as a matter of law should not determine whether the evidence preponderates, the Court does not substitute its interpretation of the facts for the jury when it determines that the record is devoid of the minimum amount of evidence from which the jury could reasonably have reached its decision. *Motter v. Everest and Jennings, Inc.*, 883 F.2d 1223, 1228–29 (3rd Cir.), *reh'g denied*, (Oct. 5, 1989). I have individually analyzed each section of this claim on which the jury found in favor of the plaintiff and I conclude that the evidence is insufficient as a matter of law to sustain the jury's awards on this claim.

### (i) Witco's Plan to Enter the Fast Lube Market.

 The jury found for the plaintiff on the claim that as of May 9, 1986, Witco failed to disclose its intent to enter into the fast lube business as a competitor of Lightning Lube (JQ 18–25). However, upon careful analysis of the record I find that the evidence is insufficient to sustain that conclusion.

First, plaintiff's argument in support of this claim is premised largely upon the allegation that Witco and Avis formed an agreement to enter into the fast lube business as early as January of 1986. As evidence that the Avis–Witco deal was "in the works" as early as January 1986, plaintiff introduced two draft partnership agreements dated "1/13/86" and "4/14/86" and a set of handwritten notes dated "4/21/86" referring to the "April 14" draft agreement. *See* PX 18, 18A and 44 respectively. As further support of its argument plaintiff offered the "self-contradicted testimony" of Mr. Golubock (Tr. 1873–74; 2105, 2134–35) and argued that Mr. Golubock changed his testimony only after consulting with counsel (Plaintiff's brief at 15).

But this evidence alone does not amount to a preponderance of credible evidence necessary to support a finding of fraud. In fact, defendant introduced sufficient evidence so as to render plaintiff's theory of a Avis–Witco conspiracy implausible.

In an effort to contradict plaintiff's *theory* that Witco–Avis negotiations were underway as early as January 1986, prior to the date on which Witco and Venuto entered into a relationship, Witco called Mr. Baumel, an attorney from the New York law firm of Bachner, Tally, Pollavoy and Mishin. Mr. Baumel testified that he did not join Bachner, Tally as an associate until May of 1986 (Tr. 6326, 22). He further testified that he prepared the draft partnership agreements (PX 18 and PX 18A) from scratch and the fact that he did not join the firm until May of 1986 demonstrates that the "1/13/86" and "4/14/86" dates typed on the draft agreements were clearly typing errors (Tr. 6326–6330). He further testified that he used the "Letter of Intent" (PX 591), dated 12/11/86 as a basis for the draft partnership agreements (Tr. 6327–28; 6338), and that the draft agreements were actually prepared on 1/13/87 and 4/14/87 (Tr. 6328).

In addition to Mr. Baumel's testimony, the internal dates on the draft partnership agreements themselves contradict plaintiff's theory as they internally bear dates of 1987, while 1986 simply appears on the cover page (PX 18 and 18A). Moreover, a part of PX 18A is a 4/24/87/letter authored by Mr. Baumel that states in relevant part: "I have enclosed two copies of a draft partnership agreement, reflecting additional changes received from our client yesterday."

Mr. Golubock clearly testified that in 1986 Witco did not have word processing capabilities (Tr. 2105), and explained his earlier confusion to Mr. Kramer's leading question on redirect (Tr. 2134–35).

 Finally, defendant is correct in its argument that it was improper for plaintiff's counsel to request and receive over objection (Tr. 7059–60) a "missing witness" charge, and to argue that to the jury when in fact there was no such witness. Plaintiff's counsel improperly argued in his closing that a Witco secretary who typed the document was a missing witness who the jury should presume would have failed to

support Witco's claim (Tr. 7205–06). This "missing witness" was nonexistent so that any such inference or presumption was not based on evidence of record but simply on the unfounded question and summation of Mr. Kramer.

■ I am cognizant of the fact that on a motion for judgment as a matter of law, the Court is not permitted to weigh the evidence or pass on the credibility of witnesses. Nevertheless, a scintilla of evidence is insufficient to withstand a motion for judgment as a matter of law. *See, Denneny v. Siegel,* 407 F.2d 433, 439–40 (3d Cir.1969). Thus, I conclude that plaintiff has failed to offer sufficient evidence so that a jury could legitimately infer that as of May 9, 1986, Witco had formed the intent to enter into the fast lube market as a competitor of Lube and that it fraudulently, and with the intention of deceiving plaintiff failed to disclose this alleged material fact.

### (ii) Witco's Agreement with Avis.

■ In December of 1986 Witco and Avis entered into a joint venture and formed a new fast lube chain—"Avis Lube." PX40. All of the evidence documents that this venture was limited to a real estate partnership. *See* Order of November 27, 1900 at 7. Nothing in the "Letter of Intent" (PX 591) or the draft partnership agreements establishes Witco as a competitor of Lube (PX 18, 18A). Rather, the agreements provide a vehicle by which Witco would supply the financing for real estate acquisitions and management of real properties on which "Avis Lube Fast Oil Change Centers" would be operated (PX 591).

By contrast, plaintiff argues that Witco failed to disclose its intention to enter into the quick lube business as a partner of Avis. Specifically, Mr. Venuto testified that prior to the May 1986 meeting, held at Kendall's headquarters in Bradford, Pennsylvania, he was asked by Kendall's Fast Lube Director, Mr. Glady for Lube's financial statements, Venuto's personal financial statements, and all of Lube's Operating and Training manuals (Tr. 2675, 10–14)—in

other words "everything that has to do with my business." (Tr. 2675, 15–16). Plaintiff thus argues that had he been aware of Witco's intention of entering the quick lube market as a competitor of Lube, he would never have disclosed the requested documentation. Plaintiff's argument falls on several grounds.

First, as discussed in part (i) above, the evidence is inadequate to demonstrate by a preponderance of the evidence that as of May 9, 1986 Witco intended to enter into the quick lube business *as a competitor* of Lube. Second, even if the evidence was sufficient to place the drafting of the Avis–Witco partnership agreements as early as January 1986, and even assuming the covenant of good faith and fair dealing implicit in any contractual arrangement under New Jersey law, *Bak–A–Lum Corp. v. Alcoa Building Products, Inc.,* 69 N.J. 123, 351 A.2d 349 (1976), nothing in the Witco–Lube contract would prevent Witco from financing real estate acquisitions.

### (iii) The Intention to Honor the Agreement at the Time at Which it Was Entered.

■ The jury's finding that Witco had no intention of honoring its agreement with Lube at the time it was made (JQ 37) is not supported by the evidence.

Plaintiff's theory that Witco did not intend to honor the agreement at the time that it was made is premised upon piecing together isolated incidents that occurred after the May 9, 1986 meeting in Bradford, Pennsylvania. But in order to make out an action for fraud, the alleged misrepresentation cannot simply be based upon a promise to perform that is subsequently unfulfilled. Rather the moving party must prove, by a preponderance of the evidence, that at the time the promise to perform was made, the promisor had no intention of fulfilling the promise. *See Anderson v. Modica,* 4 N.J. 383, 391–92, 73 A.2d 49 (1950); *Barry v. New Jersey State Highway Auth.,* 245 N.J.Super. 302, 310, 585 A.2d 420 (Ch.Div. 1990). For "[m]ere proof of nonperformance does not prove a lack of intent to perform." *Stochastic v. DiDomenico,* 236 N.J.Super. 388, 396, 565 A.2d 1133 (App.

Div.1989), *certif. denied,* 121 N.J. 607, 583 A.2d 309 (1990).

No evidence supports the claim that Witco had such a fraudulent intention. In fact, the May 21, 1986 memorandum authored by Mr. Corwin (PX 202), expressing displeasure at Witco's agreement with Lube, supports the opposite conclusion— that as of May 21, 1986 Witco did in fact intend to honor the agreement with Lube. If Witco did not intend to honor the agreement why would Corwin be expressing his displeasure about the potential ramifications of the deal? Thus Witco's motion for judgment as a matter of law on this portion of the claim for fraud and misrepresentation is granted.

### (iv) The Representation as to the Source of Oil.

■ Although the jury found that plaintiff suffered no damages as a result of Witco's misrepresentation as to the source of oil, there is sufficient evidence from which a jury could legitimately infer that Witco did in fact misrepresent the source of its oil. In fact, there is a wealth of information from which such an inference may be drawn.

First, plaintiff introduced the "Special Difference" video. PX 868. Mr. Venuto, the President and primary stockholder of Lube, testified that in April of 1986 he met with Kendall's Richard Glady at Lightning Lube's headquarters in Brooklawn, New Jersey (Tr. 2627, 12–13). Mr. Venuto testified that he and Mr. Glady engaged in a conversation about the "Special Difference" video (Tr. 2627, 10–25). He testified that Mr. Glady was aware of the fact that he [Venuto] was "going with either Valvoline or Kendall" (Tr. 2628, 6) and that Glady was aware that plaintiff "could have gotten Valvoline Oil for $2.50 a gallon." (Tr. 2628, 10).

Venuto continued to testify that at that time, Glady told him that Pennsylvania "had the best crude oil in the world ... [and] that he would give me [a tape] that I could use in my training classes with [my] franchisees so that they would all understand the quality of this oil." (Tr. 2629, 1–4). He testified that "he [Glady] told me it

[the oil] came from Pennsylvania." *Id.* Venuto also testified that upon watching the "Special Difference Video" he concluded that the oil came from "the St. Mary's Vein." (Tr. 2629, 25).

There is evidence that the "Special Difference" video does not reveal the fact that the Kendall petroleum group purchased oil from various other companies, and from various other states. (Tr. 1998–2006) (testimony of Golubock regarding the various sources of oil) (*see also,* PX 950).

Ultimately plaintiff testified that based upon the representations made by Mr. Glady, particularly regarding the source and quality of the oil, he decided to go with Kendall as opposed to Valvoline. Moreover, he testified that based upon these representations he opted to pay a higher price for the oil (Tr. 2632, 23–25; 2633, 19–25), which was passed through to the franchisees.

Plaintiff also testified that the success of the franchisees was linked to the "right price of oil." (Tr. 2670, 23). He testified that he was not out to make a profit on the oil (Tr. 2671, 4–6) and that he did not provide his franchisees with anything but "operational support and training, and I guarantee leases, and I feel it's no more than right to be able to buy the best that I could buy for these people. And I told them that I would personally guarantee that also." (Tr. 2670, 24–25, 2671).

Based upon the foregoing, a reasonable jury could legitimately infer that Ralph Venuto did not get what he "bargained for"—Mr. Venuto entered into a contract with Kendall based upon the representations of Mr. Glady, and he opted to pay a higher price for the oil because he thought he was getting the best "oil in the world." Mr. Venuto was then given a copy of the "Special Difference" video so that he could show his franchisees what they were getting and what he was "guaranteeing." (Tr. 2670, 24–25, 2671).

Thus, despite that fact that the jury failed to award damages on the claim for fraud and misrepresentation based on the source of oil, there was sufficient evidence

on which it could have inferred that Witco did in fact misrepresent the source of its oil. Moreover, there is sufficient evidence from which the jury could find that this misrepresentation was of a material fact, that it was made with the intent to deceive the plaintiff and that the plaintiff justifiably relied on this representation of fact when it formed the agreement with Witco. Defendant's request for judgment as a matter of law on this issue is therefore denied.

### (v) The Alleged Cover–Up.

■ Finally, plaintiff urges that the existence of an intentional plot to destroy Lube may be inferred from Witco's attempts to cover up its wrongdoing (Plaintiff's Brief in Opposition at 18). And in support of this argument plaintiff cites various instances of contradicted testimony (see examples of contradicted testimony set forth in Plaintiff's Brief in Opposition at 18–19).

But the evidence simply does not support the conclusion that plaintiff urged upon the jury. No fabricated evidence was introduced. And the jury's disbelief of Witco's witnesses cannot substitute for positive proof of cover-up so as to prove the existence of an intentional act. *See Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 894 (3d Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981).

### (vi) Conclusion on the Claim for Fraud and Misrepresentation.

Based upon the foregoing analysis, I conclude that the evidence is insufficient to sustain a verdict on plaintiff's claims that Witco failed to disclose, as of May 9, 1986, its intent to enter into the fast lube market as a competitor of Lube, and that as of May 9, 1986, Witco did not intend to honor the agreement it had entered into with Lube. Thus, defendant's request for judgment as a matter of law on these claims is granted. With respect to the remaining claim, the misrepresentation as to the source of oil, there is sufficient evidence to sustain the jury's finding that Witco did misrepresent the source of its oil. Defendant's request for judgment as a matter of law on this claim is therefore denied.

### (vii) The New Trial Motion on The Claim for Fraud and Misrepresentation.

As an alternative to judgment as a matter of law, defendant moves for a new trial pursuant to Fed.R.Civ.P. 59. As set forth above, the record on this issue is critically devoid of that quantity and quality of evidence from which a jury might have legitimately found for the plaintiff on those portions of the claim for fraud and misrepresentation that alleged that Witco failed to disclose, as of May 9, 1986, its intent to enter into the fast lube market as a competitor of Lube, and that as of May 9, 1986, Witco did not intent to honor the agreement it had entered into with Lube. It then follows that the verdict on these portions of the claim are contrary to the weight of the evidence and that a new trial must be conditionally ordered to prevent a miscarriage of justice. *Roebuck v. Drexel University*, 852 F.2d 715, 736 (3d Cir.1988).

Moreover, a substantial error was made in the giving of the jury instructions by the inclusion of the "missing witness charge" to the jury over defendant's objection (Tr. 7059–60), when in fact there was no such "missing witness." And any inferences that the jury drew about this witness were improper as they were premised upon Mr. Kramer's unfounded question, his summation and the erroneous jury charge, as opposed to evidence of record.

Having had the opportunity to observe the demeanor of the witnesses I conclude that the jury's verdict on these portions of the claim for fraud and misrepresentation were the result of passion and prejudice. Accordingly, I am conditionally ordering a new trial. *See Id.* (citing *Semper v. Santos*, 845 F.2d 1233, 1237 and n. 35 (3d Cir.1988)).

### B. The Claim for Tortious Interference With Contract.

The tort of interference with present or prospective economic relations is regarded as a method of protection against unjustified interference, and has been extended to protect situations that have not been cemented by a contract. It is usually said

that the basis for liability is intent, that is at least in the sense that the tortfeasor acts with knowledge that interference will result, and if, in addition, he acts for an improper purpose. This, of course, presupposes knowledge of the plaintiff's contract or interest. W. Page Keeton, *Prosser & Keeton on Torts,* § 129 at 982 (5th Ed. 1984).

The elements necessary to assert this claim are set forth in *Printing Mart v. Sharp Electronics,* 116 N.J. 739, 750–751, 563 A.2d 31 (1989):

(1) A complaint based on tortious interference must allege facts that show some protectable right—a prospective economic or contractual relationship ... A complaint must demonstrate that a plaintiff was in "pursuit" of business.
(2) The complaint must allege facts claiming that the interference was done intentionally and with "malice."
(3) The complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain.
(4) The complaint must allege that the injury caused damage.

*See also, Zippertubing Co. v. Teleflex, Inc.,* 757 F.2d 1401 (3d Cir.1985).

(i) Witco Acted Maliciously and for an Improper Purpose.

"Malice"[6] as used in a tort claim of malicious interference constitutes the intentional wrongdoing of an act without justification or excuse. *Labus v. Navistar International Transportation Corp.,* 740 F.Supp. 1053, 1063 (D.N.J.1990).

In support of its claim for interference with contract, plaintiff offers the testimony of three Lube franchisees, Messrs. Vangarelli, Craig and Fischer.

Mr. Vangarelli testified that sometime in June of 1987, Mr. Corwin, Kendall's District Sales Manager, visited Mr. Vangarelli's shop and told him that if he was to use any other oil than Kendall, he ran the risk of having his equipment repossessed (Tr.

491–4921). He also testified that Mr. Corwin offered him a deal if he were to "walk away from Ralph and deal directly with me and Kendall" (Tr. at 492–493) Mr. Corwin also told him that he was "being ripped off" by Mr. Venuto (Tr. 494) Mr. Vangarelli testified that as a result of this conversation he "lost trust in the Laser Lube concept" and this feeling altered what he said to prospective Lube franchisees (Tr. 495).

Mr. Craig testified that in February of 1987 he met with Kendall's Mr. Corwin. At this time, Mr. Corwin allegedly discussed the benefits of Mr. Craig operating as an independent (Tr. 521–523). Also, Mr. Corwin mentioned the Kendall–Avis arrangement (Tr. 517, 19–25) and Kendall's intention to "cut relations" with Mr. Venuto (Tr. 518, 1–5). Based upon these comments, Mr. Craig proceeded to open as an independent operator (Tr. 518, 23–25; 519–521).

Mr. Fischer testified that he was visited by Kendall's Mr. Corwin and Philadelphia Wholesale Distributor's ("PWD") Mr. Beattie in September of 1986. He further testified that at this meeting, Mr. Corwin offered him a deal if he were to go independent (Tr. 641–642). The deal included the same Kendall oil at a cheaper price, free equipment, signage and advertising dollars. *Id.* Mr. Fischer testified that this conversation raised considerable doubt as to Mr. Venuto's credibility (Tr. 643). Mr. Fischer continued by testifying that in the summer of 1987 he was again visited by Mr. Corwin at which time Mr. Corwin threatened to remove his equipment (Tr. 643–44). He further testified that he repeated this information to other Lube franchisees, specifically, the Knaubs in Lancaster, Pa., Bill Brooks in Pittman, the Pollacks in Morrisville, to Donna and Joe in Runnameade and to Dave Greenberg in Philadelphia (Tr. 647).

In addition to the foregoing testimony, there is evidence of Kendall's Scott Eyers offering a Lube franchisee free equipment

6. Under New Jersey law what constitutes "malice" for a tort claim does not necessarily meet the demanding standard of what constitutes malice for punitive damages. *See Fineman v. Armstrong World Industries, Inc.,* 774 F.Supp. 225, 244 n. 16 (D.N.J.1991).

and Kendall oil at the same price at which it was sold to the plaintiff and at a time when Lube was not on credit hold (Tr. 382).

### (ii) Witco's Conduct Was Not Justified.

Despite Witco's arguments to the contrary, Witco cannot claim that the aforementioned conduct was "justified" (Witco's brief in support of judgment as a matter of law at 65), or an assertion of an "equal or superior right" that negates the malice required for tortious interference. *See Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n.*, 37 N.J. 507, 517, 181 A.2d 774 (1962) (citation omitted).

"[W]hat is actionable is '[t]he luring away, by devious, improper and unrighteous means, of the customer of another.'" *Printing Mart–Morristown v. Sharp Electronic Corp.*, 116 N.J. 739, 750, 563 A.2d 31 (1989) (quoting *Louis Kamm, Inc. v. Flink*, 113 N.J.L. 582, 586, 175 A. 62 (E. & A.1934)); *see also, Ideal Dairy Farms v. Farmland Dairies*, 1991 WL 279430 (Ch. Div., N.J. Sept. 30, 1991). And in this case, there is ample evidence from which a jury could infer that Witco employees acted with an improper purpose rather than in a legitimately competitive manner.

### (iii) There Was Sufficient Evidence of Causation.

Based on the testimony of Messrs. Vangarelli, Craig and Fischer, a jury could legitimately infer that Witco's conduct proximately caused Lube to sustain damages. Mr. Venuto testified that after the December 1986 franchise meeting where complaints were circulated about Lightning Lube and Ralph Venuto, he noticed a decrease in sales contracts for new franchises (Tr. 2767). Moreover, he testified that after the 1986 franchise meeting, royalty payments almost stopped completely (Tr. 2773), which "ruined" Lube's cash flow and made it "almost impossible" for Lube to sell new franchises. *Id.*

Mr. Venuto's testimony is supported by the testimony of Mr. Vangarelli who testified that as a result of his conversation with Kendall's William Corwin, he "lost trust in the Laser lube concept" and this feeling altered what he said to prospective franchisees (Tr. 495). In fact, Mr. Vangarelli testified that Corwin's comments about Lube affected what he said to approximately 25–30 prospective franchisees (Tr. 6979), and that he told these prospective franchisees "not to get involved with it [Lube]. I felt I was being ripped off, the same would happen to them." *Id.* Moreover, Vangarelli testified that these comments differed significantly from what he told prospective franchisees prior to Corwin's comments. *Id.*

Finally, Venuto testified that "100%" of the lawsuits brought by franchisees against Lube were filed after Corwin made comments about Lube to Mr. Craig (Tr. 3885), and after the September and December 1986 franchise meetings. *Id.*

Viewing all inferences in a light most favorable to the plaintiff, there is no question that plaintiff has introduced sufficient evidence to satisfy the elements of a claim for intentional interference with present and prospective economic relations and to support a jury verdict in its favor. Accordingly, the jury verdict awarding damages in this amount of $7,045,500 must stand. Likewise, there are no grounds for conditionally ordering a new trial on this claim. *See generally, Northeast Women's Center, Inc. v. McMonagle*, 689 F.Supp. 465 (E.D.Pa.1988), *aff'd in relevant part*, 868 F.2d 1342 (3d Cir.1989).

### C. The Claim for Breach of Contract.

■ Defendant attacks the jury's award of damages in the amount of $2.5 million on the claim for breach of contract with respect to equipment and the award in the amount of $18,340.00 on the claim for advertising promotional display (signage) allowances. *See* Defendant's Brief at 62–64. Specifically, defendant argues that damages on these claimed injuries were not foreseeable at the time the contract was formed and therefore no recovery is permitted on this claim as a matter of law. *See e.g., Joan Ryno, Inc. v. First Nat'l Bank of South Jersey*, 208 N.J.Super. 562, 506 A.2d 762 (App.Div.1986); *McGraw v. Johnson*, 42 N.J.Super. 267, 273, 126 A.2d 203 (App.Div.1956).

But defendant failed to include this argument in its motion for judgment as a matter of law filed at the close of plaintiff's case and renewed at the close of all the evidence. *See* Appendix E at 16–18 annexed to Defendant's Brief in Support of Motion for Judgment as a Matter of Law. Since this post-trial motion under Rule 50(b) is a renewal of the motion under Rule 50(a) for judgment as a matter of law made at the close of all the evidence, defendant may not assert a ground in this motion that was not included in the trial motion for judgment as a matter of law. *See* 9 Charles A. Wright & Arthur A. Miller, *Federal Practice and Procedure* § 2537, at 598 (1971). Accordingly, defendant's attack of the award for damages on the breach of contract claim is procedurally barred. The jury verdict must stand. Likewise, there are no grounds for conditionally ordering a new trial on this claim. *See generally, Northeast Women's Center, Inc. v. McMonagle,* 689 F.Supp. 465 (E.D.Pa.1988), *aff'd in relevant part,* 868 F.2d 1342 (3d Cir.1989).

### D. The Compensatory Damage Award.

Defendant attacks the compensatory damage award on the ground that: (1) the Court erred in permitting Mr. Venuto to testify pursuant to Fed.R.Evid. 701 because his testimony was not based on personal knowledge and was unhelpful to the jury's clear understanding of a fact in issue; and (2) on the ground that the evidence in this case did not establish damages with reasonable certainty. *See* Defendant's Brief in Support of Judgment as a Matter of Law at 71–75.

#### (i) Ralph Venuto's Lay Opinion Testimony.

■ Witco's attack on Mr. Venuto's lay opinion testimony is twofold. First, Witco attacks the foundation upon which Venuto's testimony is based; second it argues that even if the foundation is proper, Mr. Venuto's testimony is nevertheless beyond the permissible scope of lay opinion testimony as set forth in Fed.R.Evid. 701.

Fed.R.Evid. 701 states:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The "modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Eisenberg v. Gagnon,* 766 F.2d 770, 781 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985), (citing *Teen–Ed, Inc. v. Kimball International, Inc.,* 620 F.2d 399, 403 (3d Cir.1980)).

Mr. Venuto, an experienced business man, testified that he prepared the preliminary damages report that formed the basis for his damages testimony (Tr. 3782). He testified as to the method of calculation of damages for both past and prospective losses (Tr. 2898–2931). And he further stated that the preliminary damages report was based in part on the materials that were prepared in order to take the company public (Tr. 2905).

■ Although Mr. Venuto testified that he prepared the preliminary damages report by utilizing, in part, reports prepared by Messrs. Zibell and Gedrich (Tr. 3782, and PX 920 (Preliminary Damages Report)), this alone is insufficient to render Venuto's testimony outside of that contemplated by Fed.R.Evid. 701. It is logical that in preparing a damages report the author may incorporate documents that were prepared by others, while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible under Fed.R.Evid. 701. *See Glosband v. Watts Detective Agency,* 21 B.R. 963, 980–81 (Bankr.D.Mass.1981). Moreover, the cover letter to the preliminary damages report states that Mr. Venuto compiled the projections of his financial consultant, David Zibell, and compared them with the financial statements prepared by H.D. Gedrich, Lube's accountant. *See* PX 920 (Preliminary Damages Report). While Zibell and Gedrich may have had

personal knowledge of the calculations, that is not to say that Mr. Venuto did not.

Finally, at p. 59 of its June 1991 motion *in limine,* Witco conceded that the preliminary damages report was based upon Venuto's projections, and not Zibell's. Thus, it is inconsistent for Witco to now argue that Mr. Venuto lacks personal knowledge of the facts upon which the preliminary damages report is premised. I therefore find that Mr. Venuto possessed sufficient personal knowledge to render his opinion testimony admissible under Fed.R.Evid. 701.

Next defendant argues that Mr. Venuto's damages testimony was not helpful to the jury's determination of a fact in issue as it bore no relation to the operating history of Lube franchisees. Accordingly, defendant argues that Mr. Venuto's damages testimony was speculative and therefore improper. But again, Venuto testified at length as to the manner in which the damages were calculated (Tr. 2898–2931). Thus, there is no evidence that the damages calculations were not based on the history of Lube. And it is not the function of the Court, in ruling on this motion to pass on the credibility of a witness.

Affording the plaintiff the benefit of all rational inferences, a jury could find sufficient evidence to justify an award of compensatory damages. Thus, the verdict must stand.

### (ii) The Compensatory Damages Were Proven With Reasonable Certainty.

■ It is well settled in New Jersey that the plaintiff bears the burden of proving beyond uncertainty that he has in fact been damaged, *Sandler v. Lawn–A–Mat Chem. & Equip. Corp.,* 141 N.J.Super. 437, 453, 358 A.2d 805 (App.Div.1976), *certif. denied,* 71 N.J. 503, 366 A.2d 658 (1976), and once that has been established the plaintiff bears the burden of proving the amount of such damages with a reasonable degree of certainty. *Tessmar v. Grosner,* 23 N.J. 193, 203, 128 A.2d 467 (1957).

Recently, the Third Circuit, following the trend of other jurisdictions and interpreting New Jersey law, held that New Jersey no longer would follow a *per se* rule precluding all new businesses from recovering any damages for lost profits. *In re Merritt Logan, Inc.,* 901 F.2d 349, 357 (3d Cir.1990) (citing with approval *Universal Computers v. Datamedia Corp.,* 653 F.Supp. 518, 525–27 (D.N.J.1987), *aff'd* 838 F.2d 1208 (3d Cir.1988)). The Court went on to state that the cases that initially set forth the "new business rule" are more than fifty years old, and that the New Jersey Supreme Court has not had the recent occasion to consider the rule. The holding, however, did not alter the longstanding rule that damages must be shown with reasonable certainty. *Id.* at 359.

Plaintiff has offered ample evidence to support its claim that it has in fact been damaged (*See* Tr. 2931; Tr. 2904; Tr. 1548 and 3030, Tr. 2748; PX 191). Moreover, as stated above, Mr. Venuto testified at length as to the manner in which the present and prospective damages were calculated (Tr. 2898–2931). It is the function of the jury, and not the Court on a motion for judgment as a matter of law, to assess Mr. Venuto's credibility and afford the proper weight to his testimony. 9 Charles A. Wright & Arthur A. Miller, *Federal Practice and Procedure* § 2524, at 543–545 (1971). And apparently, the jury did just this, as evidenced by the fact that it did not adopt plaintiff's damages calculations of approximately $70 million but awarded a much smaller amount of compensatory damages.

Based upon the testimony in the record, there is sufficient evidence from which a jury could ground its award of compensatory damages. Defendant's motion for judgment as a matter of law is therefore denied. And as there are no grounds for ordering a new trial on this claim, defendant's motion for a new trial on compensatory damages is likewise denied. *See generally, Northeast Women's Center, Inc. v. McMonagle,* 689 F.Supp. 465 (E.D.Pa.1988), *aff'd in relevant part,* 868 F.2d 1342 (3d Cir.1989).

### III. THE PUNITIVE DAMAGES CLAIM.

#### A. The Standard Under New Jersey Law.

In New Jersey, an award for punitive damages requires that defendant's conduct

be "wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil minded act' or an act accompanied by a wanton and willful disregard for the rights of another." *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 49, 477 A.2d 1224 (1984) (citations omitted). "[T]he requirement may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." *Fischer v. Johns–Manville Corp.,* 103 N.J. 643, 655, 512 A.2d 466 (1986) (quoting *Berg v. Reaction Motors Div.,* 37 N.J. 396, 414, 181 A.2d 487 (1962)). But however one describes the conduct that will justify punitive damages, one thing is clear: "The key to the right to punitive damages is the wrongfulness of the intentional act." *Id.* (quoting *Nappe,* 97 N.J. at 49, 477 A.2d 1224).

The purpose and the nature of punitive damages must be carefully explained to the jury. *Fischer,* 103 N.J. at 672, 512 A.2d 466. In fact, in determining whether a defendant's conduct was sufficiently egregious to justify an award of punitive damages, the jury should consider that the purpose of punitive damages is to punish a tortfeasor and deter him and others from similar conduct. *Viviano v. CBS, Inc.,* 251 N.J.Super. 113, 597 A.2d 543 (App.Div.1991), *certif. denied,* 127 N.J. 565, 606 A.2d 375 (1992) (citing *Fischer,* 193 N.J.Super. 113, 120, 472 A.2d 577 (App.Div. 1984), *affirmed,* 103 N.J. 643, 512 A.2d 466 (1986)).

Moreover, the fact-finder should consider: the seriousness of the harm to the public; the degree of defendant's awareness of the harm and of its excessiveness; the cost of correcting or reducing the risk; the duration of the harmful conduct and its cover-up; the attitude and conduct of the enterprise upon discovery of the misconduct; and the defendant's reasons for failing to act. *Fischer,* 103 N.J. at 673, 512 A.2d 466 (citations omitted).

Then, if a jury should decide to award punitive damages, additional considerations can guide the determination of the appropriate amount. For one, punitive damages should bear some reasonable relationship to actual injury, but the New Jersey Courts have consistently declined to require a set numerical ratio between compensatory and punitive damages. *Id.* (citing *Nappe,* 97 N.J. at 50, 477 A.2d 1224 (other citation omitted)). Other factors to be considered include the amount of plaintiff's litigation expenses, the financial condition of the enterprise and the probable effect thereon of a particular judgment, and the total punishment the enterprise will probably receive from other sources. *Id.*

### B. The Assessment of Punitive Damages Against a Corporation.

The general rule in New Jersey is that punitive damages may not be assessed vicariously against a principal for the acts of its agent. *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 769 (3d Cir. 1990) (citing *Enright v. Lubow,* 202 N.J.Super. 58, 82, 493 A.2d 1288 (App.Div.1985), *certif. denied,* 104 N.J. 376, 517 A.2d 386 (1986)). There are only limited exceptions to this rule; that is:

(a) the principal or a managerial agent authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

*Id.* at n. 28 (citations omitted).[7]

In other words, where an employee is so high in the principal's organization that his employment and conduct is considered executive in character, or where the

---

7. New Jersey adopts this "conservative view" for the imposition of vicarious liability for punitive damages as set forth in the Restatement (Sec-

ond) of Torts § 909 (1979). *See* 2 James D. Ghiardi and John J. Kircher, *Punitive Damages L & Prac.* § 24.02 and Table 24–1.

principal specifically authorized or ratified the wrongful act of the employee, exemplary damages may be imposed on the principal for acts of its agents. *See Winkler v. Hartford Accident & Indemnity Co.,* 66 N.J.Super. 22, 29, 168 A.2d 418 (App.Div.), *certif. denied,* 34 N.J. 581, 170 A.2d 544 (1961); *GNOC Corp. v. Aboud,* 715 F.Supp. 644, 651 (D.N.J.1989).

As the Second Circuit articulated in *Doralee Estates v. Cities Service Oil Co.,* 569 F.2d 716, 722 (2d Cir.1977):

> The test of who is a "superior officer" or a "person of authority" to bind the corporate entity to participation or ratification cannot be rigid.... The question is whether the act or ratification is done by a person of such responsibility as to arouse the "institutional conscience." The test is whether the continuing tortious conduct has been brought home to the consciousness of relatively important managerial personnel with authority to make a decision for the corporation that would have prevented the damage. To hold that punitive damages may not be imposed unless there is participation in the tortfeasing decision by the highest corporate executives is unrealistic given the size of giant corporations like appellant whose operations are so far-flung (internal citations omitted).

■ This case does not involve an unfit agent who was recklessly employed or retained by the principal or a managerial agent. Accordingly, my analysis will not focus on this exception to the general rule that punitive damages may not be assessed against a principal for the acts of its agent. But this discussion will focus on whether the agent's acts were authorized or ratified and whether the agent was employed in a managerial capacity and was acting in the scope of employment.

First, there is no evidence that supports plaintiff's allegation that there was a corporate strategy to put Lube out of business. Nowhere in the record is there evidence that Witco, as the principal, authorized the misconduct that allegedly led to Lube's demise. At best, plaintiff has offered sufficient evidence to support the claim for tortious interference, but it has not offered evidence to support a finding of an evil minded corporate scheme whereby Witco intentionally plotted to destroy Lube. Absent this evidence, plaintiff cannot convert a tort into a vehicle for recovering punitive damages. Moreover, the jury's disbelief of Witco's witnesses cannot substitute for positive proof of corporate scheme in order satisfy plaintiff's burden of proving the existence of an intentional evil minded act. *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 894 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). Finally, the absence of evidence to support those portions of the fraud claim that alleged that Witco intended to enter the fast lube market as a competitor of Lube and that Witco intended to dishonor its agreement with Lube from the outset (*see* parts II(A)(i) and II(A)(iii) above), further underscores the lack of any evil-minded corporate design.

Second, there is no evidence that Witco had knowledge of or ratified any alleged evil-minded or egregious acts committed by its employees. The evidence that supports Witco's claim for tortious interference consists mainly of the alleged wrongful acts of Messrs. Glady, Corwin and Eyers, the latter two being low level Kendall employees. The fact that these employees or agents committed a tort, absent a showing that Witco was aware of and ratified their conduct, is insufficient to sustain an award of vicarious liability to the principal for the acts of its agent. In fact, there was no evidence that Messrs. Pruch and Golubock, who were Witco executives, even knew of this activity, much less ratified it. And even if Mr. Corwin's conduct was tortious and could give rise to punitive damages against the individual, there is no evidence that any executive at Witco knew of Corwin's conduct—the jury's assessment of vicarious liability to the principal for the acts of its agent was therefore improper as to punitive damages.

Moreover, even if the jury chose to believe that Mr. Glady, Kendall's Manager of Fast Lubes, was involved in the "Wieland Incident" (PX 659–5); (Tr. 1239), involve-

ment in a single tortious act is insufficient to prove knowledge and ratification of a sinister corporate stratagem. And insofar as the Glady memorandum directing Mr. Corwin to remove the equipment from Mr. Craig's fast lube operation (PX 672) it is important to note that at the time this memorandum was written, Mr. Craig, who had been a Lube franchisee, was operating as an independent under the name "U.S.A. Oil Express."

Thus the evidence does not support the inferences that were urged upon the jury—that Witco executives had knowledge of and ratified evil minded acts that were part of an alleged corporate strategic plan giving rise to punitive damages. And plaintiff's arguments to the contrary were invitations to speculation and conjecture. I am aware that the Supreme Court has held that a case may not be taken away from the jury merely because "a *measure* of speculation and conjecture is required." *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946) (emphasis added). Nevertheless, plaintiff has woven a sinister corporate plot out of a series of isolated incidents, the culmination of which was a staggering jury award based primarily on unsupported supposition.

Inferences to be valid must be based on fact not argument. The record is critically deficient of facts from which a jury could rationally conclude that Witco seduced Lube into a relationship only to destroy it. Nor is the evidence sufficient to conclude that what constitutes tortious interference with Lube's franchises emanated from a scheme that was either authorized or ratified by executive employees. *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 768 n. 28 (3d Cir.1990).

Stupidity should not be rewarded but neither must it be punished. Defendant is therefore entitled to judgment as a matter of law on the claim for punitive damages.

### C. The New Trial Motion On the Claim for Punitive Damages.

When a trial judge is convinced that there has been a miscarriage of justice, it is his or her duty to set aside the verdict.

*Overpeck v. Chicago Pneumatic Tool Co.*, 634 F.Supp. 638, 639 (E.D.Pa.1986), *aff'd*, 823 F.2d 751 (3d Cir.1987). I am convinced that even if there were sufficient evidence to sustain the jury's award of punitive damages, it would be a miscarriage of justice not to conditionally grant a new trial. I would like to point out that my conditionally ordering a new trial on punitive damages is in no way related to the jury instructions in this area.

During the trial, counsel were invited to brief *Pacific Mutual Life Ins. Co. v. Haslip*, —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) in the context of the constitutionality of New Jersey law on punitive damages and the proposed jury instructions (Tr. 1157). While plaintiff's counsel chose to accept my invitation and submitted a memorandum of law in this area, counsel for the defense did not so choose. Moreover, plaintiff's counsel agreed to the inclusion of the seven *Haslip* criteria in the jury instructions, but counsel for the defense did not want them to be included. And in fact, the jury charge on punitive damages as it stands is virtually an adoption of defendant's proposed charge. Thus, defendant cannot now argue the infirmity of the jury instructions in light of *Haslip*. *See* Fed.R.Civ.P. 51 (failure to timely object to a charge constitutes a waiver); *see also, Robertson Oil Co. v. Phillips Petroleum Co.*, 930 F.2d 1342, 1347 (8th Cir.1991).

Since the defendant declined the Court's invitation to address the jury instructions in light of *Haslip* and since the award of punitive damages violates New Jersey law on damages, it is neither propitious nor necessary to review the constitutionality of the punitive damage award under the Due Process Clause of the Fifth Amendment. *See generally, Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1382 n. 7. (5th Cir.1991); *Robertson Oil Co. v. Phillips Petroleum Co.*, 930 F.2d 1342, 1347 (8th Cir.1991); *Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc.*, 88 Md.App. 672, 596 A.2d 687, 705–710 (1991). Moreover, during the oral argument conducted on the present motions, Witco's

**1198**

counsel acknowledged that a constitutional analysis under *Haslip* would not be any more stringent than an analysis under New Jersey law. *See generally, Fischer v. Johns–Manville Corp.*, 103 N.J. 643, 673, 512 A.2d 466 (1986).

Nevertheless, the jury instructions in this case were similar to those approved in *Haslip* and the federal scheme, based on New Jersey common law, for scrutinizing punitive damages awards satisfies the *Haslip* procedural due process requirements. *See Pacific Mutual Life Ins. Co. v. Haslip*, — U.S. —, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), *see also, Johnson v. Hugo's Skateway*, 949 F.2d 1338, 1348 (4th Cir.1991) (citing *Browning–Ferris Indus. Inc. v. Kelco Disposal Inc.*, 492 U.S. 257, 279, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989)).

It is equally true that in light of the insufficiency of the evidence, the presence of prejudicial error, the prejudice resulting from Mr. Venuto's emotional displays, and the fact that the punitive damage award "is greater than reasonably necessary to punish and deter," *id.* — U.S. at —, 111 S.Ct. at 1046, substantive due process requirements would mandate that the award be vacated in its entirety.

Finally, I would like to lay to rest any concerns about the Seventh Amendment in conjunction with this Court's review of the punitive damage award. My review has been narrowly focused on the reasonableness of the award under New Jersey law, which does not run afoul of the Seventh Amendment. *See Johnson v. Hugo's Skateway*, 949 F.2d 1338, 1351 n. 6 (4th Cir.1991), *see also, Fischer v. Johns–Manville Corp.*, 103 N.J. 643, 672–74, 512 A.2d 466 (1986).

My reasons for conditionally ordering a new trial are: (1) a substantial error was made in the admission of evidence; (2) the damages are excessive; (3) it is probable that the jury's verdict was based in part on passion and prejudice; (4) the dismissal of two portions of plaintiff's claim for fraud and misrepresentation as a matter of law makes it impossible to apportion the punitive damage award to the remaining claims; and (5) the jury violated its instructions

when it awarded punitive damages on the claim for fraud and misrepresentation with respect to the source of oil.

A new trial is warranted under Fed. R.Civ.P. 59, when a substantial error is made in the admission of evidence. *Northeast Women's Center, Inc. v. McMonagle*, 689 F.Supp. 465 (E.D.Pa.1988), *aff'd in relevant part*, 868 F.2d 1342 (3d Cir.1989).

■ In an attempt to demonstrate the malice and "evil minded acts" necessary to support its claim for punitive damages, plaintiff introduced testimony of statements made to Mr. Venuto by Witco's counsel. Mr. Kleger testified that after Lube filed suit against Witco, Mr. Bain, counsel for Witco, stated to Mr. Venuto, "we'll bury you" (Tr. 274). And Mr. Venuto testified that after Witco filed its counterclaim, Mr. Liebowitz, a Witco attorney, "kind of laughed at me; says [sic], you can't sell no [sic] franchises now, can you Ralph?" (Tr. 3023–3026). Despite the fact that Witco objected to the admission of these statements, they were nevertheless admitted. And upon a review of the record, their admission was erroneous.

First, it was error to admit these statements absent any proof of authorization or ratification. *See* discussion in part II(ii) (vicarious liability may not be assessed against the principal for the acts of its agent absent proof that the agent was acting as an executive, or absent a showing that the alleged wrongful conduct was either authorized or ratified by the principal).

There is no evidence that Witco authorized or ratified these statements. And Messrs. Bain and Liebowitz were clearly not executives of Witco, nor were they inhouse counsel for Witco, but rather were members of the law firm retained to represent Witco in this litigation.

■ Moreover, these statements may not be attributed to Witco under a theory of vicarious admission, Fed.R.Evid. 801(d)(2)(C), because not every statement of a lawyer may be attributed to the client. In fact it is necessary to distinguish between those statements of an attorney made in the management of the litigation

or in-court-statements (i.e. judicial admissions by pleadings, oral or written stipulations and formal opening or closing statements), with " 'casual' statements of counsel made outside of court." *See* Kenneth S. Broun, 2 *McCormick on Evidence*, § 259 at 163 (4th Ed.1992). An attorney merely because of his employment in connection with litigation does not have the authority to make out-of-court admissions for his client, except those which are directly related to the management of that litigation. *United States v. Dolleris*, 408 F.2d 918, 921 (6th Cir.), *cert. denied*, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969) (citation omitted). Moreover, recent cases generally measure the authority of the attorney to make out-of-court-admissions by the same tests of express or implied authority as would be applied to other agents. *See* Kenneth S. Broun, 2 *McCormick on Evidence*, § 259 at 163 (4th Ed.1992). I find that these statements were not related to the management of the litigation, nor was there any implicit authority vested in the attorneys to make these statements. Accordingly, the statements are beyond the pale of that contemplated by the law on vicarious admissions and a substantial trial error was made in their admission. Where there is no evidence that the client participated in the conduct, it is unfair to burden the client with the acts of the client's attorney.

This error was further compounded by the fact that plaintiff's counsel referred to these statements during closing arguments (Tr. 7252). And the error was not corrected by the fact that I included a statement of the law for the imposition of vicarious liability in the jury instructions (Jury Instr. at 50).[8] If anything, the fact that this instruction was given to the jury only compounded the error for the jury may have inferred, from the inclusion of this language in the charge, that there was evidence of corporate authorization for these remarks, when in fact there was no such evidence whatsoever.

■ Next, I shall address the size of the award for punitive damages and in so doing I conclude that the jury's award of $50 million in punitive damages is clearly excessive.

While the New Jersey Supreme Court has emphasized that punitive damages should bear some reasonable relationship to actual injury, it has consistently declined to impose a bright line ratio between punitive and compensatory damages. *Fischer v. Johns–Manville Corp.*, 103 N.J. 643, 673, 512 A.2d 466 (1986) (citing *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 50, 477 A.2d 1224 (1984)). Nevertheless, a Court, in reviewing an award for punitive damages is required to determine the reasonableness of a punitive damage award by considering other factors in the case. For example, the Court should consider the size of the compensatory damages award, the profitability of the marketing misconduct, the amount of the plaintiff's litigation expenses, the financial condition of the enterprise and the probable effect thereon of a particular judgment, and the total punishment the enterprise will probably receive from other sources. *Id.* It is with this standard in mind that I conclude that the jury's award is disproportionately severe to the culpability of Witco's conduct.

First, the misconduct attributed to Witco employees involved no violence, no physical injury to individuals or destruction of property, no threat to public health or safety, no public corruption, or criminal conduct of any kind.

Second, while plaintiff urges this Court to consider the fact that Witco's wrongdo-

---

**8.** This portion of the jury instructions reads: Where, as here, the defendant is a corporate party, punitive damages are imposed upon an employer for acts of employees or agents, such as attorneys, only in the narrow, specific circumstances where the employer has specifically authorized or ratified the wrongful act of the employee, or where the employee is so high in the employer's organization that his employment and conduct is executive in character. Thus, unless the plaintiff shows that defendant Witco either authorized or ratified the acts of its employees, including attorneys, which formed the basis for the intentional wrongdoing in the sense of an evil-minded act or that the employees who so acted were executives, no punitive damages may be awarded.

ing eliminated a fast growing company— one of the top 7 fast lube organizations in the country (Plaintiff's brief in opposition at 50), any societal loss which may have ensued from this alleged conduct most certainly cannot, and does not justify a $50 million dollar punitive damage award. And this is particularly so in light of the substantial award for compensatory damages. *See Fischer* at 673, 512 A.2d 466 (in cases where some particularly egregious conduct generates minimal compensatory damages, higher punitive damages would be justified than when substantial compensatory damages are awarded.)

Third, this is not a case that warrants a high punitive damage award as a vehicle for disgorging "the profitability of the misconduct," *id.* for there is no evidence of *any* corporate gain from the alleged misconduct of Witco employees.

 Under New Jersey law, when a trial court determines that an award of punitive damages is "manifestly outrageous" or "grossly excessive," it may reduce that award or order a new trial on punitive damages. *Id.* at 670, 512 A.2d 466 (citing *Cabakov v. Thatcher*, 37 N.J.Super. 249, 260, 117 A.2d 298 (App.Div.1955)). However, where as here, the jury's award is infected with passion and prejudice, remittitur is not available. *See Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir.1978), *see also, Mason v. Texaco, Inc.*, 948 F.2d 1546, 1560 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992) (internal citations omitted).

Here, the record documents repetitive instances of Mr. Venuto's contrived efforts (even after judicial admonition) to appeal to the sympathy of the jury by displays of emotion (Tr. 216–22; 2689–92; 5433–34). In *Drasner v. Thomson McKinnon Securities, Inc.*, 433 F.Supp. 485, 489–91 (S.D.N.Y.1977) the court noted that a party's "schooled histrionics" may require a new trial. Mr. Venuto's persistent theatrical displays—tears, raised eyebrows and facial grimaces—all done to arouse undue

passion and prejudice, effectively impeded defendant's chance for a fair trial. *Id.*[9] And when a trial is unfair, resulting in a miscarriage of justice, the proper remedy is a new trial. *See Northeast Women's Center, Inc. v. McMonagle*, 689 F.Supp. 465 (E.D.Pa.1988), *aff'd in relevant part*, 868 F.2d 1342 (3d Cir.1989).

My fourth reason for ordering a new trial is premised on the fact that since I have dismissed two portions of plaintiff's claim for fraud and misrepresentation as a matter of law, it is impossible for me to apportion the punitive damage award to the remaining claims in the case.

And finally, I conclude that the jury violated its instructions in awarding punitive damages on the claim for fraud and misrepresentation with respect to the source of oil.

Despite the fact that the jury found that plaintiff had proven all of the elements of a claim for misrepresentation as to the source of oil, the jury found that plaintiff had sustained *no* damages as a result of Witco's conduct (JQ at 27–32), thereby resulting in a no cause for action in favor of defendant on this portion of the claim. However, the jury awarded plaintiff punitive damages on this same claim for fraud and misrepresentation with respect to the source of oil. And that award clearly violated of the jury instructions for "punitive damages may be assessed in an action for an intentional tort involving egregious conduct whether or not compensatory damages are awarded, at least where *some injury, loss or detriment to the plaintiff has occurred.*" *See Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 51, 477 A.2d 1224 (1984) (emphasis added), *see also O'Connor v. Harms*, 111 N.J.Super. 22, 29–30, 266 A.2d 605 (App.Div.), *certif. denied*, 57 N.J. 137, 270 A.2d 40 (1970) (punitive damages award struck down because no nominal damages were awarded). But where as here, the jury did not even find sufficient injury, loss or detriment so as to award *nominal damages,* its award

---

**9.** This is so even though the Court, at the time, discounted the prejudicial effect of the emotional manipulation of the jury. Concerns for judi-

cial economy should not take precedence over the need for a fair trial.

of punitive damages on the same claim was without legal foundation. *See*, Jury Instruction # 36 at 68.

It is for the five reasons set forth above that I am conditionally ordering a new trial on punitive damages.

## IV. WITCO'S ALLEGATIONS OF MISCONDUCT.

### A. Mr. Kramer's Contact With Former Lube Franchisees.

Witco moves for a new trial based upon Mr. Kramer's alleged witness tampering. This motion is denied for the following reasons.

First, defendant has failed to demonstrate sufficient prejudice resulting from Mr. Kramer's contact with Robert Roe, Rufus Knowlin and Irving Pollack, the husband of Idella Pollack.[10]

Upon learning of the alleged witness tampering, the Court conducted a *voir dire* examination of the witnesses out of the presence of the jury. During this examination all of the witnesses credibly testified that Mr. Kramer's conduct would not affect his or her trial testimony (Tr. 4455, 4731, 6197). And in fact, their representations during the *voir dire* were borne out by their testimony for they all without timidity testified adversely to Lube. There is no indication that their testimony was "chilled" or altered by Mr. Kramer's importuning them (Tr. 6914, 6939, 6962–66).

In support of its motion for a new trial, Witco argues that a mistrial should have been granted in order to have "enabled defendant to have investigated whether Mr. Venuto or Mr. Kramer was responsible for the refusal of a number of former franchisees to testify or even be interviewed." *See* Defendant's Brief in Support of Motion at 18–19. But again this Court reiterates that having had the opportunity to observe the demeanor of the witnesses and in light of the witnesses' unfavorable

testimony to the plaintiff, the denial of the mistrial was correct (Tr. 4735–36). In addition, there was no evidence presented to the Court indicating that any franchisee refused to testify or to be interviewed. Moreover, prior to the commencement of the trial, Witco was aware of the fact that many former Lube franchisees possessed promissory notes from Lube, and it must have known that some franchisees refused to testify or be interviewed. In other words, Witco had ample opportunity prior to the trial to investigate whether prospective witnesses were intimidated or inhibited by either Mr. Kramer or Mr. Venuto.

For Witco to argue that a mistrial was warranted because there *may* have been other witnesses favorable to the defendant is based upon nothing more than surmise. And such speculation, absent a positive showing of prejudice cannot support a mistrial nor a new trial pursuant to Fed. R.Civ.P. 59.

### B. The Court's Refusal to Allow Mr. Kramer To Testify.

Witco also argues that this Court's refusal to allow Mr. Kramer to testify about the allegations of witness tampering was ground for a mistrial, and consequently ground for a new trial. Again, this request is denied.

The requirements set forth in *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 921–22 (3d Cir.1985) (citing, *Newark Stereotypers' Union v. Newark Morning Ledger*, 397 F.2d 594, 599 (3d Cir.), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968)), were satisfied by the inclusion of a jury instruction that was very damaging to Lube's case. *See*, Jury Instruction # 20 at 31–33. Moreover, the jury was afforded the full flavor of what transpired from the witnesses' own testimony as well as Witco's robust and uninhibited summation, which fully urged upon the jury the availability of any adverse

---

**10.** There is no doubt in this Court's mind that Mr. Kramer's approach to the witnesses was done to improperly influence their testimony adversely to Witco. The circumstances surrounding his approach to the witnesses, the timing of opening settlement discussions of a wit-

ness's claim against Lube on the eve of trial and Mr. Knowlin's own evaluation of Mr. Kramer's conduct (*see* Knowlin (Tr. 4703; Tr. 4697–4698) all serve to depreciate Mr. Kramer's dissembling disavowal of an errant motive.

inference. Accordingly, the Court is hard pressed to see how defendant can argue that it was prejudiced.

Defendant also argues that Mr. Kramer's cross-examination was fraught with leading questions which it likened to testimony. The Court does not agree with this characterization. The defendant was given ample opportunity to explore the witness' responses to Mr. Kramer's cross-examination. In fact, the Court observed "there is a very substantial risk in doing that," (Tr. 6894) referring to the plaintiff having to accept the witness' answers.

▪ And finally, defendant was not prejudiced by the Court's refusal to allow the witnesses to testify as to their understanding of what Mr. Kramer was attempting to do when he contacted them. A witness' interpretation of clear statements is not admissible at trial merely because a statement has several possible inferential meanings. The helpfulness requirements of both Fed.R.Evid. 701 and 702 bar such statements. *See United States v. Dicker,* 853 F.2d 1103, 1109 (3d Cir.1988) and *United States v. Cox,* 633 F.2d 871, 875 (9th Cir.1980), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981).

### C. The General Allegations of Misconduct.

In support of its motion for a new trial, Witco invites the Court to review the charges of misconduct lodged against plaintiff's counsel. The charges span the entire case, from discovery through closing arguments. The Court is disinclined to revisit its entire inventory of rulings in this three month trial. Nevertheless, defendant's motion is denied for the following reasons.

Witco argues that many of the questions that Mr. Kramer put to the jury contained facts without basis in the record. *See* Witco's Brief In Support at 33–38. It is this Court's conclusion that defendant did not suffer any prejudice in this regard. This is particularly so as Witco objected to many of Mr. Kramer's questions, which objections when proper were sustained and curative instructions given. Moreover, the jury was instructed that arguments, statements, questions and objections of counsel are not evidence and may not be considered in determining the facts of the case. *See* Jury Instruction #8 at 11.

With respect to those questions which Witco now for the first time contends are objectionable, Witco is not relieved from the obligation of objecting at the proper time. *See* 11 Charles Wright & Arthur A. Miller, *Federal Practice and Procedure* § 2809, at 64 (1973), *see also,* Fed.R.Evid. 103(a)(1).

### D. Mr. Kramer's Closing Argument.

As part of its motion for a new trial Witco argues that Mr. Kramer's summation improperly stated the record.

First, the Court specifically invited counsel to raise any objections during the course of the closing arguments. *See generally, United States v. Pungitore,* 910 F.2d 1084, 1125–26 (3d Cir.1990), *cert. denied sub. nom, Virgilio v. United States,* — U.S. —, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991). And in fact the Court received but one objection during Mr. Kramer's summation (Tr. 7272) for which Witco asked the Court for a "very mild curative instruction" (Tr. 7273) which the Court issued (Tr. 7274). It is entirely improper for Witco to have disregarded the Court's invitation to object to those portions of the summation that it found improper, but now, after the jury has returned a verdict which is unfavorable to Witco, for it to object to Mr. Kramer's summation. Accordingly, Witco's motion for a new trial based on Mr. Kramer's conduct is denied.

### 3. CONCLUSION.

The Court has given considerable thought to the arguments raised in these post trial motions, and based upon the foregoing, orders the following: (1) that those portions of the claim for fraud and misrepresentation that allege that Witco failed to disclose, as of May 9, 1986, its intent to enter into the fast lube market as a competitor of Lube; and that as of May 9, 1986, Witco did not intend to honor the agreement it had entered into with Lube be

dismissed as a matter of law; (2) that the claim for punitive damages be dismissed as a matter of law and (3) that a new trial be conditionally ordered on both these claims. The remainder of Witco's motions are denied. A partial order for judgment as a matter of law has today been filed with the Clerk of the Court.

With respect to the remaining claims the Court calculates prejudgment interest pursuant to New Jersey Civil Practice Rule 4:42–11(b). The amount subject to prejudgment interest is $7,045,500, representing the award for tortious interference, less 25% for counsel fees. Absent punitive damages, there is no basis for including the breach of contract award in the amount subject to prejudgment interest. *See McAdam v. Dean Witter Reynolds,* 896 F.2d 750, 773 (3d Cir.1990). The interest on that amount, $5,284,125, calculated from August 10, 1987 through May 6, 1992 is:

1987—143 days at 12% per year; or $248,426.26

1988—6%; or $317,047.50

1989—7%; or $369,888.75

1990—8%; or $422,730.00

1991—8.5%; or $449,150.63

1992—127 days at 7.5% per year, or $137,517.19

The total prejudgment interest therefore equals $1,944,760.33.