**Ralph VENUTO, et al., Plaintiffs,**

v.

**WITCO CORPORATION,
et al., Defendants.**

Civ. A. No. 89–2841.

United States District Court,
D. New Jersey.

Dec. 9, 1992.

Steven M. Kramer, New York City, for plaintiffs.

John G. Gilfillan, III, of the law firm Carella, Byrne, Bain & Gilfillan, Roseland, N.J., for defendants.

## ORDER

RODRIGUEZ, District Judge.

This matter is before the court on the plaintiff's motion for recusal. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

On October 2, 1992, counsel for the plaintiff, Steven M. Kramer, wrote a letter to the court stating that I should recuse myself on two grounds: 1) that Brendan Byrne, counsel for the defendants, appointed me to the New Jersey State Commission of Investigation when he was governor; and 2) that, during the *Lightning Lube* trial,[1] I met with a "person associated closely with Mr. Byrne's firm," whom Governor Byrne later identified as a consultant to defendants on the Witco litigation. I responded to Mr. Kramer's letter on October 9, 1992, telling him that I saw no grounds for recusal, but that he should file a formal motion if he wished to proceed with the matter.

Mr. Kramer filed a formal motion for recusal on November 4, 1992, this time referring only to the alleged appointment by Governor Byrne, and not to the alleged meeting with the unnamed consultant.[2] Counsel for the plaintiff moves for the court's recusal under 28 U.S.C. § 455(a), asserting that the court's "association with [the defendants'] counsel creates an appearance of partiality requiring the presiding Judge's recusal." (Pl.'s Mot. at 1.) To support his allegation, Mr. Kramer cites Senator Bill Bradley's testimony before the Senate Judiciary Committee, which includes the following statement: "In the Democratic administration of Brendan Byrne, Mr. Rodriguez was tapped to chair the

1. *Lightning Lube v. Witco,* 802 F.Supp. 1180 (D.N.J.1992) (*"Lube I"*).

2. Both parties filed affidavits concerning the "meeting" with the consultant subsequent to the filing of the recusal motion. In deciding the

motion, however, the court disregards the allegation regarding the consultant, because the plaintiff's counsel fails to raise it in his formal motion.

State Commission of Investigations [sic]." (*See* Pl.'s Ex. A.)

The defendants show, through affidavits and other documentation, that former Governor William Cahill made the appointment to the SCI. (*See* Defs.' Attach.: Certification of John F. McCarthy, Jr. of 11/7/92, ¶ 5.; Certified Copy of Letter from William T. Cahill, Governor of New Jersey, to Hon. Robert M. Felcey of 12/26/73.) The defendants refute the plaintiff's allegations as factually and legally unfounded, and claim that the plaintiff's motion is a "transparent attempt to delay decision on the pending motions in this case and in the *Vangarelli* case." [3] (Defs.' Mem. Opp'n at 3.)

## II. DISCUSSION

### A. *The Standard for Recusal under § 455(a)*

The plaintiff moves for the court's recusal under 28 U.S.C. 455(a), which states the following: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Third Circuit has interpreted § 455(a) as requiring disqualification if there is a "reasonable factual basis for doubting the judge's impartiality ..." *U.S. v. Nobel*, 696 F.2d 231, 235 (3d Cir.1982), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983) (quoting H.R.Rep. No. 1453, 93d Cong., 2d Sess. 2, at 5, reprinted in 1974 U.S.Code Cong. & Ad.News 6351, 6354–5). *See also, U.S. v. Dalfonso*, 707 F.2d 757, 760 (3d Cir.1983) ("judge should recuse himself where a reasonable [person] knowing all the circumstances would harbor doubts concerning the judge's impar-

tiality"). The cases also make clear that evidence of bias must relate to extrajudicial events or sources of information, rather than stem from facts a judge learns from his or her involvement in a case. *U.S. v. Rosenberg*, 806 F.2d 1169 (3d Cir.1986).

Just as a judge should remove him or herself from a case if the moving party raises sufficient allegations regarding the judge's bias, a judge has an affirmative duty not to recuse him or herself if the movant fails to establish a reasonable doubt concerning his or her impartiality. *Grand Entertainment Group Ltd. v. Arazy*, 676 F.Supp. 616, 619 (E.D.Pa.1987). In *U.S. v. Sciarra*, 851 F.2d 621 (3d Cir.1988), the Third Circuit explained that the court deciding the recusal motion may scrutinize "the factual accuracy of affidavits submitted pursuant to 28 U.S.C. § 455." *Id.* at 625 n. 12 (citations omitted).

Though § 455(a) does not set forth a specific procedure for seeking a judge's recusal, courts look for guidance to the procedural requirements of § 144, which states:

[The moving party shall file an affidavit which] shall state the facts and the reasons for the belief that bias or prejudice exists ... [and] shall be accompanied by a certificate of counsel of record stating that it is made in good faith.[4]

28 U.S.C. § 144; *See also U.S. v. Furst*, 886 F.2d 558, 582 (3d Cir.1989) (section 144, along with related case law, provides guidance as to procedure for recusal motions brought under section 455).

### B. *Application of the Standard*

Here, Mr. Kramer alleges former Governor Brendan Byrne, counsel for the

---

3. The court has motions pending before it in this case and in *Vangarelli v. Witco*, 91–839. In this case, the plaintiff moves to lift the stay. In *Vangarelli*, the plaintiff moves to amend the complaint, and the defendants cross-move for a judgment on the pleadings and to strike the class allegations. Mr. Kramer represents the plaintiffs, and has moved for the court's recusal in both actions.

4. Section 144, entitled "Bias or Prejudice of Judge," further states:

Whenever a party to any proceeding in a district court makes and files a timely and

sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. 28 U.S.C. § 144. In *Johnson v. Trueblood*, 629 F.2d 287 (3d Cir.1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981), this Circuit determined that both §§ 144 and 455(a) "require the same type of bias for recusal," and differ only in "the standard the district judge is to apply to his or her conduct." *Id.* at 290.

defendants, appointed me to chair the New Jersey State Commission of Investigation (SCI) in 1973. The plaintiff's recusal motion, however, lacks any factual basis.[5] As the defendants' exhibits demonstrate, Governor William Cahill, Governor Byrne's predecessor, made the appointment. In his reply, counsel for the plaintiff alleges that even if Governor Byrne was not responsible for the SCI appointment, there is still an issue of prejudice:

> While Mr. Byrne served as Governor he possessed the authority to terminate Judge Rodriguez as Chairman of the State Commission of Investigation. However, at his pleasure, then Governor Byrne, [sic] permitted Judge Rodriguez to serve as Chairman. Hence, there is the appearance that Judge Rodriguez may feel beholden to Mr. Byrne.

(Pl.'s Reply at 1.) To begin, the plaintiff's counsel cites no legal support for the proposition that a judge must recuse under these or similar circumstances. In addition, though I do not "feel beholden" to Governor Byrne for allowing me to remain as chair of the SCI, a reasonable person would not assume partiality on my part based on events dating back more than thirteen years.

It is unfortunate that the court must direct its resources to deciding such a motion for recusal, when even a cursory investigation of the facts would have revealed the spuriousness of the allegations. Mr. Kramer, moreover, was aware of the erroneous nature of his allegations before he filed the formal motion for recusal, as the defendants notified him of his error upon receipt of his initial letter to the court. (Letter from Gilfillan 11/7/92.) The administration of justice would be significantly impeded if a judge had to disqualify him or herself whenever attorneys appearing before the court have had past dealings with the judge. This is especially the case, as here, when the events in question are remote in time, and unlikely to affect judicial impartiality. Ultimately, the clients pay the price when their attorneys expend their time and effort assembling motions with little factual merit.

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED on this 8th day of December, 1992, that plaintiffs' motion for recusal is DENIED.

---

5. This is not the first time Mr. Kramer has alleged that I have a conflict of interest, based on patently erroneous grounds. In November 1990, he submitted the affidavit of Carol Venuto, one of the counterclaim defendants in *Lightning Lube v. Witco*, 802 F.Supp. 1180 (*Lube I*) who claimed she overheard Governor Byrne tell someone in the courtroom that he and I were related to one another. She contended that:

> ... Witco's attorney, Brendon Byrne [sic], stated that Judge Rodriguez was related to

him. He stated that Judge Rodriguez's grandfather's brother married Mr. Byrne's sister. (Venuto Aff. of 11/13/90, ¶ 3.) In response, counsel for the defendants informed the court that Mr. Kramer and his client were mistakenly referring to Governor Byrne's telling his co-counsel, Mr. Gilfillan, of his relationship to an Assistant United States Attorney who was in the courtroom just prior to the hearing that Mrs. Venuto attended in *Lube I*. (Letter from Gilfillan of 11/15/90, at 1.)