DECISION
The defendants, Providence Auto Body Inc. and John H. Petrarca (defendants), move this Court to declare a mistrial in the above-entitled case. The defendants contend that the Court has failed to disclose "the nature of [its] relationship with the plaintiff" in accordance with Sup. Ct. Art. VI, Canon 3E, warranting a mistrial. The plaintiff, Thomas R. DiLuglio (plaintiff), has objected to this motion.
Supreme Court Article VI, Canon 3E provides in pertinent part:
 "1. A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might — reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party . . . ."
However, with respect to disqualification our Supreme Court has held that "before a judge is required to recuse in order to avoid the appearance of impropriety, facts must be elicited indicating that it is reasonable for members of the public or a litigant or counsel to question the trial justice's impartiality." State v. Clarke, 423 A.2d 1151, 1158 (1980). With respect to Canon 3E's federal counterpart, 28 U.S.C. § 455 (a), the First Circuit has described the standard as "an objective one; the judge must determine `whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the [movant], but rather in the mind of the reasonable man.'" U.S. v. Lopez,944 F.2d 33, 37 (1st Cir. 1991) (quoting United States v. Cowden,545 F.2d 257, 265 (1st Cir. 1976), cert. denied, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977)). The First Circuit has further cautioned that § 45 must be narrowly construed as the judge must always be "wary of the possible improper motivations behind an application for disqualification." In Re: San JuanDupont Plaza Hotel Fire Litigation, 129 F.R.D. 409 (D. Puerto Rico 1989). Accordingly, a "challenge to a judge's appearance of impropriety must be convincing in light of (1) the nature of the case (2) the facts, and (3) the time of the motion. Id. at 414. When presented with a motion for disqualification, a judge must also be mindful that she "has as great an obligation not to disqualify [herself] when there is no occasion to do so as [she] has to do so when the occasion does arise." State v. Clark, 423 A.2d at 1158 (citing Amidon v. State, 604 P.2d 575, 577 (Alaska 1979)).
In their motion, defendants, without supporting affidavit, allege that the following facts, which they allegedly have recently discovered, would have warranted a motion for disqualification at the time the Court was assigned this case:
 "her Honor had been appointed to this Honorable Court in 1984 and to the Workers Compensation Commission in 1982 when the Plaintiff, Thomas DiLuglio, was Lt. Governor for the State of Rhode Island and the presiding officer over the Senate. Also, the Plaintiff's son was a member of the Senate Judiciary Committee which appointed her Honor to the Workers' Compensation Commission."
Further, the defendants maintain that from the following circumstances a reasonable person would question this Court's impartiality:
 "her Honor should have fully disclosed her relationship. A reasonable person knowing that the plaintiff was the Lt. Governor and the presiding officer of the Senate when her Honor was appointed to both this Honorable Court and the Workers' Compensation Commission would question her Honor's impartiality even if her Honor believed that there was no actual bias on her part."
Alternatively, defendants object to, in addition to the untimeliness of the within motion, the "frivolous and vague nature of the accusations" as they argue that defendants failed to include the following facts in their motion: whether Thomas A. DiLuglio participated in the 1982 Senate Judiciary Committee's deliberation concerning the Court's nomination to the Workers' Compensation Commission; whether Thomas A. DiLuglio voted for said 1982 confirmation and/or participated in the final confirmation vote; whether said vote was unanimous; and whether Thomas R. DiLuglio presided over the Senate during the 1982 or 1984 confirmation votes and, if so, voted.
With respect to disclosure, the Court possessed no conscious awareness of the information now proffered as creating an appearance of impropriety during the subject litigation. Now being asked to consider whether the Court's impartiality might reasonably be questioned with respect to same, the Court believes a reasonable person, knowing all the subject circumstances, would not question the Court's impartiality.
The nature, facts, and time of the within motion do not create a true or convincing appearance of impropriety. The nature of this case is unlike that of Liljeberg v. Health ServicesAcquisition Corp., 486 U.S. 847, (1st Cir. 1995) on which defendants rely. Liljeberg involved a sitting judge who was a member of a university board of trustees that was negotiating with the party on trial before the judge. Significantly, the litigant's success before the judge was critical to the university's profitably selling its land as paid to that litigant for a project. The subject litigation involves an action for corporate dissolution and an accounting, the outcome of which is totally unrelated and immaterial to the Court's judicial appointment. Furthermore, at no time during the within matter, has the Court been even remotely involved with the judicial selection process, nor has it at any time, past or present, maintained any relationship with the DiLuglio family. See GluthBros, Const. v. Union Nat. Bank, 598 N.E.2d 136, 1368 (Ill. App. 2 Dist. 1989) (common theme in appearance of impropriety cases is a judge having a present, ongoing relationship with an attorney in a pending case). Furthermore, in U.S. v. Gordon, 974 F.2d 1110, 1114 (9th Cir. 1992), involving a motion for recusal of a judge who had been appointed by a president who was a victim and potential witness in the case before him, the 9th Circuit held "it is not reasonable to suspect that [the judge's] ability to preside impartially would be affected by the fact that President Reagan appointed him." See also, Zaias v. Kaye, 643 So.2d 687
(Fla. App. 3 Dist. 1994) (a party attorney's contributing to a sitting judge's previous campaign for which he had also served on the campaign committee did not indicate a "special and substantial political relationship'" warranting disqualification.)
In Rhode Island, a political association between the hearing judge and the Chafee family also did not serve as the basis for a recusal motion that was granted on another ground. Specifically, the trial judge had served as a former campaign manager for Senator John Chafee who had been responsible for that judge's appointment to the bench and who was a cousin of Will Chafee, a director and shareholder of the then-party defendant, Providence Journal Company. In rejecting the judge's relationship with the senator as a ground for recusal, the First Circuit held that "the tenuous link between Senator Chafee and the defendant through his cousin, totally unknown to Judge Selya, would not raise even an eyebrow of the reasonable person objectively assessing the Judge's impartiality." Home Placement Service v. ProvidenceJournal Co., 739 F.2d 671, 675 (1st Cir. 1984). Here, the First Circuit recognized the relationship between the judiciary and the political system, namely that "[i]t is common knowledge, or at least public knowledge, that the first step to the federal bench for most judges is either a history of active partisan politics or strong politic of connections . . . ." Id. The First Circuit found that "`this background alone is seldom sufficient in itself to provide a reasonable basis for recusal.'" Id. (quoting Brodyv. President Fellows of Harvard College, 664 F.2d 10, 11 (1st Cir. 1981), cert. denied, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982)).
This historical relationship between the bench and the bar has been particularly recognized in a small state such as Rhode Island. Our Supreme Court has noted that "mere acquaintanceship between a member of the bench and the bar, particularly in a state the size of Rhode Island is not a ground for recusal" and "[i]f it were the state's judicial system might well grind to a halt." State v. Clarke, 423 A.2d at 1158. Even in State v.Romano, 456 A.2d 746, 753 (R.I. 1983), involving a trial judge's long-standing relationship with a local prosecutor and his family, our Supreme Court held that the relationship, clearly more than an acquaintanceship, was not of such a nature as to warrant a recusal. As the nature of this Court's alleged association with the DiLuglio family can be deemed non-existent, the Court is satisfied that the allegations before it are legally insufficient to invoke Sup. Ct. Art. VI Canon 3E.
Finally, with respect to requests for judicial recusal, the timeliness of the motion is a factor for consideration. Implicit in the threshold good faith required of the movant is the timeliness of the motion. In Re: San Juan, 129 F.R.D. at 418. Motions filed by "a desire to protract the litigation . . . or save it as a tool to use conveniently depending on how the proceedings develop," Id, demonstrate a lack of good faith. The instant litigation was commenced in 1989 and has spanned a seven year time period. The allegations herein raised on August 29, 1996 emanate from facts of public record and knowledge that are remote in time and which defendants' "knew or should have known" at an earlier date prior to the previous decisions that were rendered on August 24, 1994 and July 1, 1996, years after the litigation had commenced and after the 1993-94 trial on the merits. See Ainsworth v. Combined Ins. Co. of Amer., 774 P.2d 1003, 1019 (Nev. 1989). Courts have been particularly wary of petitioners who knowing the facts alleged to create an appearance of impropriety, "lie in wait, raising the recusal issue only after learning of the Court's ruling on the merits." In Re:Cargill Inc., 66 F.3d 1256 (1st Cir. 1995) (quoting Phillips v.Amoco Oil Co., 799 F.2d 1464, 1472 (11th Cir. 1986) cert. denied,481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Additionally, with respect to the substantive "appearance of impropriety," time frame is another material factor because various courts have held that it is reasonable to conclude that an appearance of impropriety existed in situations which involved a current, ongoing relationship. See Gluth, 548 N.E.2d at 1364. Here, there is no ongoing relationship, and the allegations are based on events that are "remote in time and unlikely to affect judicial impartiality." Venuto v. Witco Corp., 809 F. Supp. 3, 5 (D.N.J. 1992). However, our Supreme Court has held that with respect to even ongoing relationships it would not be willing "to create a per se rule that a judge must recuse himself because of such relationship." State v. Romano, 456 A.2d at 754.
Having balanced the need to preserve the public faith in impartiality against the reasons to sit in the absence of a legally sufficient showing of a real reason for disqualification,State v. Romano, 456 A.2d at 754, this Court is satisfied that defendants have not presented factual grounds for a reasonable person to doubt this Court's impartiality. As defendants' allegations are legally insufficient, and thus do not invoke Sup. Ct. R. Art. VI, Canon 3E, the Motion for a Mistrial is denied.